MORRIS COOPER, ADMINISTRATOR OF THE ESTATE OF BETSEY M KISLER, v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Negligence—Fatal injury to infant at railroad crossing—Contributory negligence—Action for benefit of parents—Evidence—Damages.*

1. It is *gross* negligence in a railroad company to back its trains across the main street in a village without a brakeman at the rear end as a lookout, and in readiness, in case of danger, to apply the brakes, and thus prevent collision or accident.

2. While the non-employment of a watchman at a street crossing by a railway company may not be imputed as negligence, yet it casts upon the company the duty of observing additional care in operating its trains across the street to prevent accidents.

3. On the facts stated in the opinion, plaintiff's intestate was not a trespasser in attempting to cross defendant's track, and whether she exercised proper care in so doing was a question for the jury.

4. It is a wholesome precaution for persons approaching a railway track to look both ways, and listen for approaching trains, and this is what is *generally* required; but it is not a rule of *universal* application. Every case must depend upon its own circumstances, and it would be unreasonable to apply such rule, under all circumstances, without regard to the condition of things at the time. *Carver v. Plank Road Company,* 61 Mich. 585 (head-note 6); *Potter v. F. & P. M. R. R. Co.,* 62 Id. 22, 23; *Guggenheim v. Lake Shore & M. S. Ry. Co.,* 66 Id. 150, 151 (head-notes 4, 5, 10).

5. In a suit for damages under How. Stat. § 8314, for the negligent killing of a child by a railway company's cars, testimony showing the pecuniary circumstances of the parents is admissible.

6. Where, in *such* a case, certain tables, constructed from the official records of the registrar general for England and Wales, known as the "English Tables," were received in evidence to show the average duration of life, based upon experience, at certain ages, which showed a less probable duration of life than the American experience, as shown in How. Stat. § 4245,—

*Held,* that the error was not one prejudicial to the defendant.

66 261 / 67 396

66 261 / 78 535

66 261 / 84 547

66 261 / 87 380 / 87 612

66 261 / 90 608

66 261 / 96 343

66 261
104 586
104 592
104 616

66 261 / 110 649

66 261 / 114 262

66 261 / 115 34

66 261 / d119 586

66 261
s33NW 306
s11ASR 482
129 311

66 261
s33NW 306
s11ASR 482
131 7424
131 8426

66 261 / e134 1142

66 261 / 142 385

66 261
146 7570
146 10571
146 10575

7. In an action brought under How. Stat. § 8314, to recover damages for the negligent killing of a child of 11 years of age, the court instructed the jury that in assessing damages they might allow for the value of the services of the deceased to her parents until she arrived at the age of 21 years, and might *further* take into consideration such *other* pecuniary benefits as the parents might reasonably be expected to realize had she lived for the *balance* of her probable duration of life, not exceeding theirs; to the latter portion of which charge exception was taken, defendant's counsel insisting that the damages should be limited to the minority of the child.

*Held*, that the exception was well taken, and that any estimate or value placed upon events so uncertain must be without any satisfactory basis to rest upon.

8. In such a case the jury are not warranted in giving damages not founded upon the testimony, or beyond the means of compensation for the injury inflicted; but they must be confined, with rare exceptions, to those damages which are capable of being measured by a pecuniary standard.

9. The rule that in actions brought under How. Stat. § 8314, where the parents are the beneficiaries, if the evidence shows that the deceased had been in the habit of making contributions from his own means to them, their damages might be based and estimated upon such customary contributions, is not applicable in the case of a very young child who has never made any such contributions, and when it is impossible to show that she ever will.

10. In this case it is held that the verdict was no larger than was authorized by the statute, nor than the jury might have found under that portion of the charge relating to the services of the deceased during her minority; and, no error appearing to have been committed prejudicial to the defendant, the judgment for $1,550 is affirmed.

Error to St. Joseph. (Pealer, J.) Argued May 4, 1887. Decided June 9, 1887.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Weaver & Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*Keightley & Knowlen*, for plaintiff.

CHAMPLIN, J. On a bright, cold morning in January, 1886, Betsey M. Kisler, a little girl of 11 years of age, started for school in the village of White Pigeon. She was residing with her grandmother, whose house was situated south of defendant's railroad. The school-house was on the north side of such railroad, and a considerable distance therefrom.

Kalamazoo street is the main thoroughfare crossing defendant's road in the village of White Pigeon, over which those who reside south of the road pass in reaching the main part of the village. Defendant's road runs nearly east and west at this point, curving slightly to the south as it proceeds west. There are three tracks crossing Kalamazoo street,—a main track, which lies furthest to the north, and two side tracks. Three freight trains had arrived at the station on the morning in question. No. 68, headed east, on the main track; No. 86, a local freight, also headed east, occupied the side track called the "Warehouse Track;" No. 69 next arrived, headed west, on the main track.

At the arrival of No. 68, the engineer placed the engine in charge of the head or front brakeman, while he and his fireman went to breakfast. The rear brakeman was left upon the train. After the engineer and fireman left the train, the head brakeman, acting as engineer, proceeded to do some switching, and left some cars on the side track, and had come back and attached the engine to the balance of the train, which then consisted of the engine, tender, two box cars, and the caboose; and, while standing near the water-tank, the conductor from No. 69, which had in the meantime left the main track, and taken a switch east of Kalamazoo street, requested those in charge of No. 68 to pass east of his train on the main track, so as to let him pass to the west, as the local freight wished to use the track he was on. Thereupon the conductor of No. 68 left the train, and went to the station, and the head brakeman, acting as engineer, with the rear brakeman occupying the forward platform of the

caboose, proceeded east a sufficient distance to allow No. 69 to back upon the main track to the west of No. 68. As soon as number 69 had taken the main track, they proceeded west, crossing Kalamazoo street, and No. 68 at once followed backing towards the station. The position of the brakeman was as before stated. At the time they crossed Kalamazoo street, the train was moving a little faster than a man could walk. It was propelled by the momentum given it by the engine when it first started to back; the steam having been shut off several rods east of Kalamazoo street. There was no lookout or brakeman upon the rear end of the train as it backed towards the station. After No. 69 had crossed Kalamazoo street, the school girl stepped upon the main track, and stood between the rails looking at the receding train, when she was struck by the caboose of train No. 68, and run over and killed.

The main questions in the case are the negligence of the defendant, and the contributory negligence of the intestate. Questions of minor importance will be considered later. The main questions arise under the request of the counsel for defendant to instruct the jury to find a verdict in favor of his client.

There was sufficient evidence to be submitted to the jury from which they could find defendant's negligence. Indeed, it was gross negligence in defendant to back its train across a thoroughfare like Kalamazoo street, in a village, without a brakeman at the rear end as a lookout, and in readiness, in case of danger, to apply the brakes, and thus prevent collision or accident. It must be remembered that the defendant employed no watchman at this crossing, and, while that fact cannot be imputed as negligence, yet it cast upon the defendant the duty of observing additional care in operating its trains across the street to prevent accidents. Can any rational being doubt that, if the brakeman had been upon the rear platform of the caboose, he would have seen the

child in time to have stopped the train, propelled simply by its own momentum, at a rate of speed but little faster than a person walks? A person in that position, without applying the brakes at all, and animated with a desire to save life, could have leaped from, and outstripping the train, rescued the child from danger. Both the engineer and brakeman claim that they kept a lookout, and did not see the child, which is some evidence from which it might be inferred that the brakeman at least was not in his proper position.[1]

. As to contributory negligence on the part of the plaintiff's intestate. Defendant's counsel admit that the rule is well settled as to the degree of care expected and required of children; that the age and intelligence of the child is always an element to be considered. But, while conceding this, counsel insist that with this limitation it becomes as much a question of law, under a given statement of facts, as though the acts of an adult were being considered; that if the child has reached that age that, under the existing conditions of things, it must have known that it was dangerous to be or stand in a certain place, or to do a certain thing, then the child may be and is chargeable with contributory negligence, the same as a grown person would be. Many cases are cited in brief of counsel as instances where children have been held accountable to the doctrine of contributory negligence. And counsel contend that the evidence shows that the child was a trespasser upon the grounds of the company, and that it owed her no duty, and is liable only for gross negligence.

In this view I do not agree. The evidence was conflicting as to whether the little girl was proceeding north on her way to school, which was the theory of the declaration, or whether she had crossed the track, and had turned back and went between the rails from the north. Be it either way, she could not be considered a trespasser. She was in the highway, and no person has testified, if she did turn back, with what

[1] See *Battishill v. Humphreys*, 64 Mich. 514 (head-note 5).

intent she did so.   She may have bethought herself of some-
thing which may have required that she should return to her
home.  If so, and she desired to cross, she could not do so until
the cars had passed.  Defendant showed conclusively that No.
86 was standing across the street upon the warehouse track,
waiting for 69 to get out of its way.   In that case she waited
until 69 passed, and then, as she started, she saw 86 blocking
the street in front of her; and naturally enough she stepped
forward, and waited for 86 to get out of the way, and, while
doing so, looked toward the receding train, without
looking or expecting another train to follow in its
wake so soon.  The testimony shows that the bells on
the different engines were ringing, and there evidently was
much confusion and noise which might well distract the
attention of an older person than she.   Besides, few persons
would, without reflection, consider it unsafe to step upon the
track immediately after a train had passed, and was still
going from them.   She had seen No. 68 start east, and
might naturally conclude that it was well on its way east,
instead of following a train on the same track back.   These
were circumstances which the jury would consider in passing
upon her want of care.[1]

It is not conclusive evidence of contributory negligence in
the child that she did not look up the track towards the east
before venturing to cross.   It is a wholesome precaution for
persons approaching the track of a railroad to look both
ways, and to listen for approaching trains, and it is what is
generally required; but it is not a rule of universal applica-
tion.   Every case must depend upon its own circumstances,
and it would be unreasonable to apply such rule, under all
circumstances, without regard to the condition of things at
the time.

A child of tender years is not expected or required to exer-

[1] See *Ecliff v. Wabash, St. Louis & Pacific Ry. Co.*, 64 Mich. 196.
(head-note 2),

cise the same degree of care or circumspection as an adult. The charge of the learned judge upon this branch of the case was as favorable to the defendant as it had a right to expect. He said:

"If you believe from the evidence that the deceased had crossed the track to the north in safety on her way to school, and had been standing there near the track, and had seen the train switched and running back and forth, and knew there was a train east of Kalamazoo street, and she then stepped south upon the track, and did not look or listen or use ordinary care under all the circumstances as you may find them, to ascertain whether a train was approaching from the east, and stood on the track with her face to the west, and if you find the bell was ringing, and the train moving slowly, then she was guilty of contributory negligence, such as precludes the plaintiff's recovery in this case.

"In this connection I will say, however, that the same degree of care is not required of a child as of an adult person; and if you find that she did not know the train was on the track east of her, and used such care in looking and listening, and stepping upon the track, as would reasonably be expected of a child of her sex, age, and intelligence under all the circumstances surrounding her at the time, she cannot be said to have been guilty of contributory negligence. But if she did not use such ordinary care in looking and listening and in going upon the track as a girl of her age and intelligence would reasonably be expected to use under the circumstances, and if she neglected to use such care as contributed to her danger, she was guilty of contributory negligence, and the plaintiff cannot recover, even though you may find the defendant was negligent.

"The degree of care to be exercised must always be commensurate to the danger to which the person is liable to be exposed; and you are instructed, as matter of law, that it was not the exercise of that due care and prudence which deceased was bound to exercise if she stepped upon the railroad track without looking and listening in some degree or manner, to ascertain whether it was safe to do so; and if she did go upon the track without such precaution, and if it was the approximate cause of her injury, the verdict must be for the defendant.

"It was the duty of the deceased to use her eyes and ears, as before stated, to such a degree as such a child would reasonably be expected to do with such surroundings in

approaching a crossing, and, if she neglected to do so, there can be no recovery in this case, even though the train was negligently run, and equipped with an insufficient crew."

Taken as a whole, this instruction is not objectionable, and the defendant has no cause for complaint.

The testimony showing the pecuniary circumstances of the parents of the child was admissible. *Hoppe v. Chicago M. & St. P. Ry. Co.*, 61 Wis. 357, 369 (21 N. W. Rep. 227); *Opsahl v. Judd*, 30 Minn. 126 (14 N. W. Rep. 575); *Ewen v. Chicago, etc., Ry. Co.*, 38 Wis. 613 ; *Barley v. Chicago, etc., R. R. Co.*, 4 Biss. 430; *Chicago v. Powers*, 42 Ill. 169. And see *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich. 215, where such evidence is held admissible in cases where the persons killed were very young children.

It was also proper to admit in evidence tables of standard authors showing the average duration of life, based upon experience, at certain ages. Dr. Farrs' tables were received in evidence. These tables were constructed from the official records of the registrar general for England and Wales, and are known as the English tables. They differ from those based upon the American experience, which are shown in section 4245 of Howell's Statutes. Inasmuch as the probable duration of life, as shown by Dr. Farrs' tables, is less than that shown by the American experience at the ages of 35, 40, and 11 years, respectively, the error is not one that was prejudicial to defendant.

Upon the subject of damages, the court instructed the jury as follows:

"If you find for the plaintiff, you may find such damages as you shall deem fair and just with reference to the pecuniary injury resulting from such death to those persons who may be entitled to such damages. In this case the father and mother of the deceased are the persons entitled to pecuniary benefit; and, if you find for the plaintiff, you must be governed by the reasonable expectation of pecuniary benefit to the parents from the continuance in life of the deceased. In this connection, it is proper for you to consider the

dependence the parents might reasonably place on the daughter being their support and assistance in the future. But you cannot allow for the loss of services beyond the age of 21 years. But you may take into consideration such other pecuniary benefits as the parents might reasonably be expected to realize had she lived for the balance of her probable duration of life, and not longer than theirs, of course.

"If you find that the plaintiff is entitled to recover in this case, the damage which you should give should be such a sum as fairly represents the value or chance of pecuniary benefit which the father and mother lose by the death of their daughter; and, in estimating such chance, you must take into consideration the uncertainty of the continuance of life of the deceased if she had not met with this accident, the chances that, even during the continuance of her life, whether for a longer or a shorter period, she would not have been able to earn money continuously, or care for them continuously. In other words, you must take into consideration the uncertainty of life, the uncertainty of health, the uncertainty of her continuous earnings, and the uncertainty as to the disposition of her earnings which she might have made had she lived, with the uncertainty whether she would have or not cared for them continuously, or have cared for them at all.

"Such a sum can only be recovered as the evidence shows the father and mother would have realized from the care bestowed upon them by the daughter if she had lived, or what they would have realized from the money she would have earned if she had lived, and the value of her services up to the age of 21 if she had lived. In estimating how much pecuniary benefit the father and mother would probably have derived from the care of the deceased had she lived, you are to recall the fact that a part of her labor and earnings would have been consumed in support of herself. The damages should be estimated on a money basis; that is, you should find out how much this pecuniary loss was to these parents, and should be confined to such pecuniary loss as the proof shows the father and mother have suffered by the death of their daughter. Such sum only can be recovered as the proof shows they would in all probability have received had this accident not have happened. The jury should bear in mind that the damages awarded must be compensation for the plaintiff, and not punishment for the defendant. In estimating the damages, you are not to take into consider-

ation the grief and mental pain, suffered by the father and mother on account of their daughter's death.

"As to the term of service, you should consider the probable value of the services of the deceased, or what would have come to the parents from the time of her death until she arrived at the age of 21 years, and the probable care and pecuniary benefit they would have received for the balance of her probable life, less the expenses of her maintenance during the same time. And, in this connection, it is proper for you to take into consideration the testimony in the case surrounding the deceased, of having lived with her grandmother for some years, and whether or not she would have continued to live with her grandmother, and, if so, upon what, terms, or whether she would have contributed to the support of her grandmother or her own father and mother. Such sums only can be awarded as the proof fairly shows would have come to her father and mother from the daughter, in money, care, and services, in case she had lived."

The particular objection urged against these instructions is that the damages are not limited to the minority of the child, covering a period of ten years. Compensation for loss of services during her minority, he concedes, is proper for the consideration of the jury; but he insists that the jury may not take into consideration such other pecuniary benefits as the parents might reasonably be expected to realize had she lived for the balance of her probable duration of life, not longer than theirs. What other pecuniary benefits the parents might reasonably be expected to realize the learned judge does not explain to the jury. He tells them that they should give such damages as fairly represent the value or chance of the pecuniary benefit which the father and mother lose by the death of their daughter.

Here was a broad field of chance and probabilities laid open before the jury through which they could roam without limit. They were permitted to speculate upon the future, and consider the probabilities or the possibilities of its unknown and unknowable contingencies; to consider and guess at what might occur had the daughter not been killed, and had lived

to an age measured by the probable duration of the life of a person 11 years of age. They were given the *data* of a healthy girl of 11 years of age, born of poor parents, living with and being cared for by her grandmother; and from this they were required to solve the mighty problem of a life whose future was unknown, and from its unfathomable depths to figure out the chances of pecuniary benefits the parents of that child would have received had she lived past the age of majority.

The jury, of course, must determine whether she would remain single or marry. If she married, she might marry a husband in the same humble walk of life as herself. He might be without means, or he might have a competency of this world's goods; and the daughter might or might not be in a position, and have the means and desire, to make presents to her parents to a greater or less extent. Or she might marry a millionaire, and be able and willing to apply her parents with all the luxuries of life. Or she might remain single, and be compelled to toil from morning until night to earn her livelihood. Who can place a pecuniary estimate upon chances such as these? It is evident at a glance that any estimate or value placed upon events so uncertain must be without any satisfactory basis to rest upon.

The statute authorizes the jury, in every case of this kind, to give such amount of damages as they shall deem fair and just to the persons who may be entitled to the same when recovered.[1] Under this statute the jury are not warranted in giving damages not founded upon the testimony, or beyond the measure of compensation for the injury inflicted. They cannot give damages founded upon their fancy, or based upon visionary estimates of probabilities or chances. The rule of damages in actions for torts do not apply to actions of this kind. The statute gives the right to damages;

---

[1] How. Stat. § 8314. See, also, *Mynning v. D., L. & N. R. R. Co.*, 59 Mich. 262.

but it has been held, with rare exceptions, that they must be confined to those damages which are capable of being measured by a pecuniary standard. Cooley, Torts, 271, and cases cited in note 2.

In actions brought under the statute, where the parents are the persons entitled to damages, if the evidence shows that the deceased had been in the habit of making contributions from his own means to his parents, their damages might be based and estimated upon the customary contributions of deceased proven before the jury. *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Mich. 205. But this rule is not applicable in the case of a very young child who has never made any contributions, and whom it is impossible to show ever will.

The question is whether the jury were misled by the charge as to what they might consider in estimating the damages. If they were not, the judgment should not be reversed for that error. The jury returned a verdict for $1,550. We cannot see that this verdict was larger than the jury were authorized under the statute to render, nor greater than they might find under that portion of the instructions of the court relating to the value of the earnings or services of the child until she reached the age of 21, to which no exception is taken.

Upon the whole record we are satisfied that no error has been committed prejudicial to the defendant. The judgment is affirmed.

The other Justices concurred.