CATHERINE RAJNOWSKI, ADMINISTRATRIX, ETC., v. THE
DETROIT, BAY CITY & ALPENA RAILROAD
COMPANY.[1]

[See *ante*, 15.]

*Negligence—Railroad companies—Setting fire to building—Action
for causing death of infant—Damages—Evidence—Contrib-
utory negligence—Estates of deceased persons—
Appointment of mother as administratrix.*

1. The count of plaintiff's declaration set forth in the opinion is
held to state a sufficient cause of action, and to be sufficiently
certain and explicit in its statement of the duty of the defend-
ant, and the neglect which resulted in injury to the plaintiff's
intestate.

———————————

[1] See 44 N. W. Rep. 335, for a second report of this case, where a
judgment for $1,500 was affirmed.

2. Where through the negligence of a railroad company in not keeping its engine in proper repair a dwelling-house was set on fire, and a child asleep therein burned to death, such death is not too remote from the neglect causing such fire to relieve the railroad company from liability.

3. In this case it is held that the question of contributory negligence on the part of the plaintiff, and of those in charge of the child, was one of fact for the jury.

4. Where damages for the negligent killing of a child are, by the statute, distributable equally between the father and mother, the mother has an equal interest in administration with the father, and may be appointed administratrix of the estate of the child.

5. A pecuniary injury resulting from the death of a person can only be measured by the standard of the pecuniary value of the life of such person, and its loss to the person entitled to damages.

6. In a suit to recover damages for the negligent killing of a child of five years of age, the testimony of witnesses who are shown by their knowledge or experience to be qualified to express an opinion upon the pecuniary value to its parents of the services and assistance of such a child from the age named until it arrived at the age of 21 years, over and above the cost of its care, education, maintenance and support, is admissible, not for the purpose of controlling, but of aiding, the jury in arriving at a just conclusion.

7. The mortality tables found in How. Stat. page 1084, are not admissible as evidence of life expectancy where the deceased was under ten years of age.

Error to Alpena. (Kelley, J.) Argued January 25, 1889. Decided February 8, 1889.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. M. Henry (J. C. Shields,* of counsel), for appellant, contended:

1. The question of what is necessary to allege in cases of this ind for negligence has been so often before the Court, that a reference to some of the decisions is all that seems necessary; citing *Railway Co. v. Stark,* 38 Mich. 714; *Batterson v. Railway Co.,* 49 Id. 184; *Addison v. Railway Co.,* 48 Id. 155; *Smead v. Rail-*

way Co., 58 Id. 200; *Railroad Co. v. Marcott*, 41 Id. 433; *How-ser v. Melcher*, 40 Id. 185.

2. No cause of action being alleged, a demurrer was unnecessary, but the objection could be raised on the trial; citing *Stoflet v. Marker*, 34 Mich. 313; *Broderick v. Depot Co.*, 56 Id. 261.

3. The proofs not only failed to show freedom from contributory negligence, but actually showed its existence, the only testi-mony being that of the mother of the plaintiff, who was left in charge of the children, who, although having abundance of time and opportunity to take the child from the bed, or wake him up, so that he might come out himself, says she did nothing herself, because she was "scared," and did not tell others that the child was in danger, because she "forgot." She did not even tell those persons first at the fire that the children were in the house, when, if she had done so, the child could have been removed. She worked with her neighbors to save the furniture, and forgot the child. She did tell the chil-dren that the house was going to burn, and seems to have thought that they would care for themselves after that, and paid no further attention to them. We submit that the case should have been taken from the jury; citing *Kelly v. Hendrie*, 26 Mich. 255; *Railroad Co. v. Campau*, 85 Id. 471; *Railroad Co. v. Handford*, 39 Id. 539; *Railroad Co. v. Miller*, 25 Id. 274; *Thompson v. Railway Co.*, 57 Id. 300; *Brewer v. Railway Co.*, 56 Id. 620.

4. The petition for plaintiff's appointment as administratrix shows that the father of the child was living, and no reason appears. why he should not receive the appointment, to which he had the clear legal right, if competent and willing to act; citing How. Stat. § 5849; *Gillett v. Needham*, 37 Mich. 143; *Shipman. v. Butterfield*, 47 Id. 487; *Breen v. Pangborn*, 51 Id. 29; and every dollar recovered goes to the father; citing How. Stat. § 5772 *a* (subd. 2, 3); Id. §§ 8313, 8314.

5. The burning of the house was not the proximate cause of the death of the child, but the fright of the grandmother was, and such fright was not the necessary and probable consequence of the burning of the house; citing *People v. Rockwell*, 39 Mich. 504; *Scheffer v. Railroad Co.*, 105 U. S. 249; Cooley, Torts, 68, 69.

*Cobb & Currier* (*Depew & Rutherford*, of counsel), for plaintiff, contended:

1. It is contrary to the policy of this Court to disturb a judgment because of any defect in the declaration, if no objection is made until the trial is begun; citing *Rowland v. Superintendents of*

*the Poor,* 49 Mich. 553; *Geveke v. Railroad Co.,* 57 Id. 593; *Evans v. Railroad Co.,* 60 Id. 608, 609; *Bush v. Brooks,* 70 Id. 460.

2. As to what testimony is necessary to make out a case of burning, counsel cited *Railroad Co. v. Bohannan,* 7 S. E. Rep. 236; *Railway Co. v. Ayers,* 8 S. W. Rep. 538, *Johnson v. Railway Co.,* 31 Minn. 57.

3. Was the setting on fire of the house the proximate cause of the death of the intestate? The question which determines whether a recovery can be had in each case is, was there between the original wrong and the injury any new and independent cause? citing *Lewis v. Railway Co.,* 54 Mich. 55, 58, and cases cited; *Scheffer v. Railroad Co.,* 105 U. S. 249; *Livie v. Janson,* 12 East, 648; *Tisdale v. Norton,* 8 Metc. 388; *Anthony v. Slaid,* 11 Id. 290; *Association v. Dubuque,* 30 Ia. 176; *Bosch v. Railroad Co.,* 44 Id. 402; being cases where such independent cause intervened. In the following cases the injury was held proximate; citing *Railroad Co. v. Chapman,* 80 Ala. 615; *Railroad Co. v. Arnold,* Id. 600; *Lowery v. Railway Co.,* 99 N. Y. 158; *McDonald v. Snelling,* 14 Allen, 290; *Ricker v. Freeman,* 50 N. H. 420; *Casting Co. v. Railroad Co.,* 109 Mass. 277.

4. Any money obtained as a result of this suit must be distributed according to the provisions of the statute for the distribution of personal property; citing How. Stat. § 8314; and all personal property of the intestate must be distributed according to the provisions of law for the descent of real property; citing How. Stat. § 5847 (subd. 6); and the father and mother will receive the property in equal shares; citing Act No. 169, Laws of 1883; and either had a right to administer the estate of the intestate.

CHAMPLIN, J. On March 13, 1888, at about 8 o'clock in the evening, a house standing about 15 feet from defendant's railroad track caught fire, and was entirely consumed. It was occupied by two families, one of whom was the family of Cahsmer Rajnowski, which consisted of his wife and five children. Cahsmer Rajnowski was not living with his family at the time, and only four of the children were at home on the night of the fire. The mother was absent, and had left the care of the children with her mother, who was then 84 years of age. She appears, however, to be in possession of her faculties, and not decrepit. The children's names and ages were as fol-

lows: Annie, aged 15; Balbine, also called Bena, aged 13; Joseph, aged 8; Thomas, aged 5; and Victoria, aged 3 years. The three younger children had retired for the night, and all escaped from the burning dwelling except Thomas, who was burned to death.

This action is brought against the defendant railroad company for causing the death of Thomas by and through its negligence. The declaration, after setting out the preliminary facts, alleges—

"That it was before that time, and then, the duty of the said defendant to keep his locomotives in such condition that they would not permit sparks, cinders, and fire to escape from them, and burn up and injure the property of the plaintiff and said intestate, or destroy the life of said plaintiff or said intestate, Thomas Rajnowski, or cause the death of either of them; yet the said defendant, not regarding its said duty, or using due care in that behalf, did not nor would keep its said locomotives in such condition and repair that sparks, cinders, and fire would not escape therefrom, but, on the contrary thereof, before that time, negligently suffered one of its locomotives to be so out of repair, and in such defective condition, and then, on said March 13, 1888, negligently suffered the same to remain so out of repair, and in such defective condition, by means whereof sparks, cinders, and fire then and there were emitted and thrown from a locomotive engine and train of the said defendant, on said branch of the said Detroit, Bay City & Alpena Railroad, then and there igniting the said dwelling-house in which the said plaintiff and the said Thomas Rajnowski were living, and the said dwelling-house was entirely consumed by fire, so negligently and carelessly ignited by said locomotive engine; and when said house was so consumed by fire the said intestate, Thomas Rajnowski, was sleeping in said dwelling-house, and the said fire by which said house was consumed, ignited by said defendant as aforesaid, consumed the body of said intestate, Thomas Rajnowski, and caused his instant death; and said defendant, by reason of the facts hereinbefore alleged, wrongfully and negligently caused the instant death of said Thomas Rajnowski; and the death of said intestate

Thomas Rajnowski was so caused without any fault or negligence done by him or said plaintiff,—to the damage of said plaintiff, as administratrix as aforesaid, $10,000; and therefore she brings suit."

There were two other counts, charging the negligence of defendant in the manner of running and managing its engine while passing the house occupied by the plaintiff's intestate.

No demurrer was interposed to the declaration, but defendant appeared, and pleaded the general issue; but after a jury was impaneled and sworn, and a witness called and sworn, and a question propounded to him, the defendant, by its counsel, objected to the giving of any testimony in the case, for the reason that the declaration fails to state a cause of action against the defendant. The objection was overruled, and we think rightly. The count above set out states a sufficient cause of action, and is sufficiently certain and explicit in its statement of the duty of the company, and the neglect which resulted in injury to the plaintiff's intestate.

It is also claimed that the injury resulting to plaintiff's intestate is too remote from the neglect charged to constitute a liability on the part of the defendant. In this position we cannot agree. Neither can we agree that there was a new and independent cause of the death of the intestate other than that caused by the negligence of the defendant. If, through the negligence of defendant, sparks and cinders, alive with fire, escaped from its engine, and set fire to the house, defendant is liable for all the loss of life and property which was destroyed by such fire, without any contributory negligence on the part of the party bringing the action. Contributory negligence on the part of the plaintiff, and of those in charge of the child, were questions of fact for the jury,

and on this record does not present a question of law for the court.

The plaintiff sues in a representative capacity. The judgment, when recovered, is under the statute to be distributed to the persons and in the proportions provided by law for the distribution of personal property of persons dying intestate. In this case the judgment, when recovered, will, under the law, be distributed in equal portions to the father and mother of the intestate. How. Stat. § 5847, subd. 6; Laws of 1883, No. 169. The mother, therefore, was directly interested equally with the father in administration, and therefore the objections taken to her right to be appointed must be overruled.

There are two other questions in the case which we deem of sufficient importance to examine. They relate to the exclusion and admission of testimony. The defendant's counsel produced witnesses who were fathers of children, and had reared them from infancy to manhood, and inquired of them what was the pecuniary value to its parent of a male child, from the age of 5 years until it arrived at the age of 21, over and above the care, education, maintenance, and support of such child. He also inquired of such witnesses what, in their opinion, a healthy male child of the age of 5 years would be worth to its parents pecuniarily, over and above his support, maintenance, and education, until he arrived at the age of 21; and, in different forms, the pecuniary value of the services of a child from the age of 5 until 21, and the expense of nurture, care, support, and maintenance. These inquiries were all ruled out, and the testimony excluded; the court holding that these were questions for the determination of the jury after the facts and circumstances of the parents and of the child were placed before them. The statute provides that—

"The jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death."

Testimony throwing any light upon what the pecuniary injury resulting from such death would be, is admissible. No exemplary damages are allowed; and there is no doubt, as contended for by counsel for defendant, that a pecuniary injury resulting from the death of a person can only be measured by the standard of the pecuniary value of the life of such person, and its loss to the person entitled to such damages when recovered. The testimony of witnesses who are shown by their knowledge or experience to be qualified to express an opinion upon the pecuniary value of such a life, is admissible, not for the purpose of controlling, but of aiding, the jury in arriving at a just conclusion. Such testimony may be of much or little weight with the jury. The facts are that the parent is deprived of the value of the services and assistance of the child until he is 21. In an ordinary action against a person for enticing the child away, and harboring him until he was 21, testimony of the value of such services would be admissible, and witnesses competent to form a judgment could give their opinion of such value. Testimony as to value forms an exception to the rule which excludes mere opinion. We think the testimony should have been admitted.

Counsel for plaintiff, against defendant's objection, were permitted to introduce in evidence before the jury the mortality table found upon page 1084 of Howell's Statutes. This was error, for the reason that the table gives no expectancy of life for any age under ten years. The plaintiff's intestate was but five years of age, and what pertinent use could be made of the table it is impossible to see. Those at all versed in the science of longevity know that the chances of an infant of the

age of five to reach a remote period of existence are far less than when he arrives at ten. Few, if any, insurance companies take risks upon lives under ten years of age.

We find no error in the charge of the court, which appears to have been eminently fair, and stated the law with precision.

For the errors above noticed the judgment must be reversed, and a new trial granted.

The other Justices concurred.