## WHEELER v. JENISON.

1. TRIAL—EVIDENCE OF CONTRACT—NEGOTIATIONS ON SUNDAY—
INSTRUCTIONS.

> The admission of testimony as to Sunday negotiations, in an action on a contract, is without prejudice, where the jury are instructed that all testimony tending to establish a Sunday contract is withdrawn from their consideration, and that, to entitle plaintiff to recover, they must find that the contract was made on a week-day.

2. SAME—WITNESSES—ABSENCE FROM JURISDICTION—TESTIMONY
ON FORMER TRIAL.

> The fact that one who was a witness on a former trial is absent from the jurisdiction of the court is sufficiently shown, to admit of his testimony's being read in evidence, by the affidavit of the officer into whose hands a subpœna had been placed for service on the witness, that he was unable to find him in the State, and was informed that he was in a remote State, supplemented by the testimony of the witness' attorney that he had been informed by his client that he was going to such other State, and that he had, within a month previous to the trial, received from him letters postmarked in that State.

3. SAME—ARGUMENT OF COUNSEL—IMPROPER REMARKS.

> Remarks in the argument of counsel as to matters outside the record are insufficient ground for reversal of the judgment rendered, where the trial court instructs the jury that such remarks are improper, and they are withdrawn by the counsel uttering them.

4. SAME—INFERENCES FROM TESTIMONY.

> The fact that counsel in his argument, in commenting upon the testimony of a witness and her manner of giving it, draws incorrect inferences, is not ground for reversal.

5. SAME—DENIAL OF NEW TRIAL—APPEAL.

> Although the trial court, in overruling a motion for a new trial, stated that, in his opinion, the verdict was against the weight of evidence, the Supreme Court will not reverse his decision, if from the whole statement of his reasons for denying the motion, and from the evidence returned, it is not clear that the verdict was against the weight of evidence, or worked an injustice to appellant.

Error to Kent; Adsit, J. Submitted April 19, 1899. Decided June 19, 1899.

*Assumpsit* by Morton B. Wheeler and Siegel D. Kopf against Luman Jenison and Lucius Jenison for goods sold and delivered. From a judgment for plaintiffs, defendants bring error. Affirmed.

*C. H. Gleason,* for appellants.

*Peter Doran* (*Charles A. Watt,* of counsel), for appellees.

MOORE, J. The defendants appeal from a judgment obtained against them by plaintiffs. The bill of particulars is as follows:

| | | |
|---|---|---:|
| 1897, July 6. | Gas plant sold to defendants | $365 00 |
| 1897, July 6. | Extra light for bar-room sold to defendants | 4 10 |
| 1897, July 17. | Repairing leaky sink | 1 45 |
| 1897, July 17. | 200 pounds of carbide, at 6 cents per pound | 12 00 |
| 1897, July 17. | 200 pounds of carbide, at 6 cents per pound | 12 00 |
| 1897, July 20. | 200 pounds of carbide, at 6 cents per pound | 12 00 |
| 1897, July 23. | Bell call system sold to defendants | 12 00 |

It is the claim of plaintiffs that, prior to June 27, 1897, one of the defendants came to their store to inspect an acetylene gas light they were showing; that at his request one of the plaintiffs and their agent, Keisel, visited defendants' hotel and grounds at Jenison Park, on Sunday, June 27, 1897, and made him a proposition for lighting the hotel and grounds at Jenison Park with a plant similar to the one shown him at the store; that a proposition was made, reading as follows:

"I propose to furnish and install in your hotel and grounds at Jenison Park one 50 one-half foot burner Star acetylene gas machine, together with all piping and fixtures necessary to make a complete gas-lighting plant for *i. e.* hotel office and parlor, dining-room, and 14 outside lights on grounds. Fixtures for dining-room to be 2-light bronzed pendants; office and parlor, 2-light brass pendants; 10 outside lamps for posts. You to furnish balance of outside lamps, and all the posts for outside lighting; also to

furnish man and team to plow furrow for laying pipes, and board for men while engaged in constructing and erecting plant. Price complete, including 100 pounds of carbide, $365.                     Respectfully,
                                        " W. C. Keisel.

" Further, material and workmanship to be first-class in every particular, and guarantee the lights to be uniform and steady.   Further, if all the outside lamps are furnished by you, a reduction of $2.50 each for each lamp so furnished by you.   Payments 50 per cent. in 30 days, balance of 50 per cent. in 60 days."

Mr. Jenison said the terms and price were satisfactory, and wanted plaintiffs to put in a plant at once. He said he would call at their office with his attorney, and draw up a contract according to the terms of the proposition and the verbal agreement. Later Mrs. Hanchett, acting for defendants, telephoned they feared the proposed plant would be dangerous, and to do nothing until Mr. Jenison called. Mr. Jenison called on plaintiffs June 28th or 29th, and said he had heard objections to the proposed plant. Plaintiffs claim he was told they were without foundation, but they did not desire to sell him what he did not want, and, if he would pay the freight for the things ordered, that would end it. It is claimed that, after further talk, Mr. Jenison's fears were removed, and he directed the plant to be put in, and agreed to pay for it at the times and prices named in the written proposition, which was then before the parties, and that, acting upon this agreement, made upon a week-day, plaintiffs put in the plant. One of the plaintiffs testified that, after the work was completed, he had a talk with Mr. Jenison, who said he was pleased with the light, and asked the witness to look after the carbide, and see that plaintiffs' firm kept plenty on hand, so they would not be without lights. The plaintiffs claim that the quantity of carbide charged in the bill of particulars was furnished defendants, as well as the other items named in the bill of particulars; that statements of the account were sent to Mr. Jenison, who said: " You have been sending me statements, and I am tired of it. I intend to pay one

hundred cents on the dollar, but I cannot be forced." It is claimed the plant was completed July 10th. The hotel, including the plant, was burned July 24th. It is claimed by the plaintiffs that, after the fire, their agent was at the hotel grounds, and had a talk with Mr. Jenison. Concerning this the agent testified:

"He [Jenison] said: 'I would like to have you come back with me to my barn. There was some carbide that was not used, and see if it is all right, and, if so, I wish you would take it back, and give me credit for it.' And I said: 'Certainly; if there is anything here I can take back in that respect, that is all right. I will take it back, and give you credit for it,'—which I did."

The amount taken back and credited was 250 pounds.

It is the claim of plaintiffs that the call bells and repairing the sink were for defendants, whose arrangements with the tenant, Mr. Bryant, as testified to by defendants' witness, were as follows:

"Mr. Bryant leased the property, and was to furnish the hotel with provisions, and pay the help, and divide the profits at the end of the season. We were to furnish the house with all the furnishings, and buy them,—pay for them."

It is the claim of defendants that they did not know the plaintiffs in the transaction; that they dealt with one Keisel, and no acceptance was given the written proposition on Sunday; that on Monday, at the store, Mr. Jenison expressed his distrust of the safety of the proposed plant, and that, after much talk, it was agreed the plant was to be put in on trial, defendants to have 30 days in which to try it, and were to be under no obligations to purchase it unless satisfactory to them after 30 days' trial, and that this verbal agreement was to be put in writing by defendants' attorney, and was to control; that such an agreement was drawn, and was to be signed, but was not, though Mr. Keisel agreed to sign it while the work was going on. Defendants also claim that none of the other items were properly chargeable to them. The respective

parties gave testimony tending to show their respective claims. The testimony was as conflicting as could well be. The witnesses for the plaintiffs were flatly contradicted by the witnesses sworn on the part of the defendants. The case was submitted to the jury, who found in favor of plaintiffs.

After the plaintiffs rested their case, defendants asked the court to direct a verdict, for the reason that the testimony showed no contract was made except a contract made on Sunday. At this time defendants had not rested their case, and when their motion was overruled they entered..fully upon their defense. It is not possible to read the testimony without arriving at the conclusion that this plant was put in pursuant to an agreement made subsequent to Sunday. The important controversy about this agreement is whether it provided for an absolute sale, as claimed by plaintiffs, or whether the plant was put in upon trial, as claimed by defendants.

It is said the court erred in allowing any testimony as to what occurred on Sunday, and that a Sunday contract is void, and a ratification of it is impossible; citing *Tucker* v. *Mowrey*, 12 Mich. 378; *Winfield* v. *Dodge*, 45 Mich. 355 (40 Am. Rep. 476); *Brazee* v. *Bryant*, 50 Mich. 136. The court instructed the jury that all testimony, so far as it tended to establish 'a Sunday contract, was withdrawn from their consideration. He charged them, "A contract wholly or in part made on Sunday is absolutely void by the laws of this State, and cannot be enforced by either party." They were also told that, unless the contract was made upon a week-day, plaintiffs could not recover, and that the burden was upon the plaintiffs to establish their case. We do not think defendants have any right to complain of this feature of the case.

This case was tried once before, at which trial Mr. Keisel's testimony was taken. At the present trial the plaintiffs claimed he was out of the State, and was at Seattle, Wash. They showed by the affidavit of a deputy sheriff that a subpœna had been put in his hands for

service, that he was unable to find Mr. Keisel in the State, and was informed he was at Seattle. It was also shown by an attorney that Mr. Keisel informed him he was going to Seattle to take charge of the business of a Grand Rapids company, and had been absent from Grand Rapids two months, and the attorney was employed to look after his business interests here, which business required him to correspond with Mr. Keisel; that he knew his handwriting, and that he received one letter from him postmarked Seattle, Wash., March 10, 1898, and another postmarked April 18, 1898. This trial commenced May 13, 1898. It is alleged the admission of this testimony was error; that, before it should have been permitted, the testimony of some person with whom he had formerly lived should establish the fact of his absence. The important thing to be shown to allow the testimony to be read is the absence of the witness from the jurisdiction of the court. It is immaterial by whom it is shown, if it is in fact shown. We think it was established, and the testimony was competent. *Howard* v. *Patrick*, 38 Mich. 795; *Stewart* v. *Bank*, 43 Mich. 257; *Dunbar* v. *McGill*, 69 Mich. 297.

It is claimed plaintiffs failed to establish any liability on the part of defendants to pay for the carbide and the other items in the bill of particulars, and the court should have so directed the jury. We cannot say from the record, taking the surroundings of the case, the relationship of the tenant with the defendants, the statement which Mr. Keisel says was made to him by one of the defendants, that there was no proof of a liability. We think, with the trial judge, it was a question for the jury.

Complaint is made of the argument of plaintiffs' counsel, which it is said was prejudicial, and, taken in connection with all the surroundings of the case and the verdict of the jury, should be regarded as reversible error; counsel citing *Seligman* v. *Ten Eyck's Estate*, 60 Mich. 269, *Donovan* v. *Richmond*, 61 Mich. 470, *Amperse* v. *Fleckenstein*, 67 Mich. 248, and many other cases. Any argument of counsel based upon matters outside the record

is reprehensible, and ought to be promptly stopped by the trial judge. It is, however, just as much incumbent upon the attorneys of the defeated party to confine themselves to the record as for the other attorneys to do so. The record is not very full as to what occurred, but it is full enough to indicate the remarks of counsel were not unprovoked in one of the instances about which complaint is made. When the attention of the trial judge was called to the argument, he at once said to the attorney it was improper, and what was said was withdrawn by the attorney. While condemning the course of counsel, we are not inclined, under such circumstances, to reverse the case. *Sweet* v. *Railroad Co.*, 87 Mich. 559; *De Long* v. *Booming Co.*, 88 Mich. 282. In the other instance of which complaint is made, the attorney was commenting upon the testimony of a witness, and her manner of giving it. While we might not be inclined to draw the same inference from this testimony that counsel drew, we do not think what he said is reversible error. The case of *Dikeman* v. *Arnold*, 83 Mich. 221, is in point.

A motion for a new trial was made and overruled. Among other reasons urged why a new trial should be granted was that the verdict was contrary to the weight of evidence. In his disposition of the motion the trial judge said:

"One of the principal reasons alleged on the part of the defendants for a new trial in this case is that the verdict of the jury was against the weight of the evidence. In the opinion of the court, that was true."

It is urged here with great persistence and apparent feeling that the verdict rendered was an unrighteous one; that, the circuit judge having found it was against the weight of evidence, it was his duty to set the verdict aside; and, as he has failed to do so, this court ought to do what he ought to have done. Before determining this question, however, the rest of what the circuit judge said upon that branch of the case ought to be quoted. It is as follows:

"Yet it does not necessarily follow that a new trial should be granted for that reason. It is the province of the jury to find the facts from the evidence. It is its duty to find those facts, if in favor of the plaintiff, from a fair preponderance of the evidence. Fair preponderance of the evidence means the weight of the evidence, which the jury was instructed did not mean the greater number of witnesses sworn on a given point. The credibility of the witnesses was for the jury. All the facts and circumstances proved in the case the jury had the right to consider in determining whether the witnesses testifying on the part of the plaintiffs were entitled to greater credit than those testifying on the part of the defendants, notwithstanding the witnesses on the part of the defendants exceeded those on the part of the plaintiffs in number. The court, from personal acquaintance with defendants' witnesses, may have thought they were entitled to greater credit. It was not the province of the court to determine that question. The jury has determined that against the defendants, as it had a right to do, and the court would not be justified in granting a new trial on that ground."

The testimony in the case, as we have before said, was very conflicting. While the judge ought not to invade the province of the jury, and substitute his judgment of the questions of fact for that of the jury, he ought not to hesitate to take the responsibility of setting a verdict aside if he is clearly of the opinion the verdict is an injustice to the parties. We all know the weight to be given to the testimony of a witness will be largely determined by his appearance and manner. The jurors and the circuit judge saw the witnesses. Their opportunities for deciding who of these witnesses were telling the truth were much better than ours. We are not so clearly satisfied the verdict is against the weight of evidence, and worked an injustice to defendants, as to feel justified in reversing the case.

The other assignments of error have been considered, but we do not deem it necessary to discuss them.

Judgment is affirmed.

The other Justices concurred.