SNYDER *v.* LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY CO.

1. DEATH BY WRONGFUL ACT—DAMAGES—INFANTS—EXPENSE OF
EDUCATION—INSTRUCTIONS.

In an action for the negligent killing of a boy between 11 and
12 years of age, an instruction that, in determining the value
of his services, the expense of educating him in the manner
in which he would probably have been educated, and the
number of years he would probably have attended school,
might be taken into account, was not erroneous.

2. SAME.

Nor was it error to instruct that the fact that the boy had
shown some aptitude for a certain line of work would not
"by any means" establish that he would have been able,
through any such work, to earn large sums of money, where
the court added that such fact might be considered, with all
the other testimony, in determining the earning capacity of
the boy.

3. SAME—NEW TRIAL—INADEQUACY OF VERDICT.

The action of the lower court in refusing to set aside, as in-
adequate, a verdict of $250 for negligently causing the death
of a boy between 11 and 12 years old, was sustained.

Error to Kalamazoo; Adams, J. Submitted June 5,
1902. (Docket No. 21.) Decided September 17, 1902.

Case by Gardiner F. Snyder, administrator of the estate
of Leo R. Snyder, deceased, against the Lake Shore &
Michigan Southern Railway Company, for negligently
causing the death of plaintiff's intestate. From a judg-
ment in his favor for a part of the damages claimed, plain-
tiff brings error. Affirmed.

*Howard, Roos & Howard,* for appellant.

*Dallas Boudeman,* for appellee.

MOORE, J. In May, 1901, Leo R. Snyder, plaintiff's
intestate, was killed on a railroad crossing. Suit was

brought, and a judgment rendered in favor of plaintiff for $250. Plaintiff moved for a new trial. His motion was overruled. The case is brought here by the plaintiff by writ of error.

Two questions are involved: *First.* Did the judge err in his instructions to the jury in relation to the measure of damages? *Second.* Did the judge err in refusing to grant a new trial because the amount of the verdict was inadequate? Before answering these questions, a brief statement of facts is necessary. At the time of his death, Leo R. Snyder was 11 years and 5 months old. He was a boy of intelligence, who was attending graded school, and who drove cows to pasture for his neighbors, and, when he had leisure, sold popcorn and peanuts. The father testified no plans had been made as to whether the boy should complete a course in the public schools. The testimony of his father was that he earned enough to pay for his own clothes, though it was not shown what the clothes cost. It was the claim of the plaintiff that his son had unusual aptitude for drawing and woodcarving; that he had some instruction from a relative, who was an engraver and designer, and that this boy, if he pursued that line of study, would make a skillful engraver and designer. None of his work was shown in evidence, and it was not shown he had ever earned anything as an engraver and designer. Against the objection of defendant, testimony was introduced of the following character:

" *Q.* With this boy's aptitude for the business as you saw it, with proper instructions that you gave him, about how long would it be before he would, in your judgment, become proficient enough to earn money at the business?

" *A.* I think it would have taken him not over a year, and, if he had kept on at the way he was going at the time of his death until he was 15 years of age,—he was 12 at the time of his death,—he could have earned easily from $12 to $15 a week. Any one could with the talent that he had."

On the part of the defendant there was testimony introduced as to the earning capacity of boys, some of whom

had been instructed in drawing, and others of whom had no instruction. It was the judgment of some of these witnesses that boys of the age of the deceased would not earn anything over and above the expense of their board, clothing, and education.

The plaintiff offered the following request:

"You are instructed that, if you find that the plaintiff is entitled to recover in this case, the measure of his damages will be the value of the services of his son during his minority, less the probable cost of his support and maintenance, as shown by the testimony in the case, taking into consideration the probability of the deceased living until 21 years of age, and also the probability of the father and mother of the deceased living until the deceased reached the age of 21 years."

This was not given, unless it was covered by the general charge, which was as follows:

"In this case, if the verdict of the jury is for the plaintiff, it can only be for an amount that the boy Leo Snyder's services would have been worth over and above the expenses of taking care of him, clothing him, and educating him from the time of his injury up to the time he was 21 years of age.

"In considering the question of how much the services of the said Leo Snyder would probably have been worth from the time of his injury up to the time that he was 21 years of age, over and above the expense of taking care of and clothing him and educating him in a manner which was probable that he would have been educated, the jury are entitled to take into consideration what the services of a boy, such as the testimony describes him to have been, would have fairly been worth ordinarily.

"While there has been testimony allowed in this case as to what wages have sometimes been paid boys for services in particular lines of business, this is not of itself conclusive as to what the services of this boy would have been worth.

"There has been evidence introduced on the part of the defendant on the question of the value of the services of a boy of the age that this one was at the time of his injury, and from that time up to the time he was 21 years of age;

and the jury must make up their minds on this subject based upon facts, not upon any fancies which they may have in their minds.   What would be the value, ordinarily, of the services of such a boy, over and above his expense as above set forth, as shown by the evidence ?

"The jury has been allowed to hear the testimony of witnesses in different kinds of business, and in somewhat different stations or kinds of business of life, giving their judgment as to what the value of the services of a boy would ordinarily be from the age of Leo Snyder up to the time that he was 21 years of age, over and above the cost and expense of raising him, and his cost and expense of living; and the jury are entitled to take this testimony into consideration with any other that may be in the case for the purpose of determining this question.

"The jury is instructed that the fact, if it be a fact, that the boy Leo Snyder was in the habit of making pictures or drawings, or was interested in that line of work, would not by any means establish as a fact in this case that he would at some future time be able, through any such work, to earn any large sums of money.   You may consider that testimony, however, as bearing upon his possible earning power and ability had he lived.   While this testimony was allowed to go in before the jury, it does not follow that the jury would be justified in determining that his services in the future would be worth what those of somebody else may have been in the line of business that was mentioned by the witnesses.

"It is not alone what a boy would probably earn from the time he was 11½ years old until he was 21, but the jury should consider also the amount of probable expense of raising, educating, clothing, and feeding such boy, and the payment of such other ordinary expenses as would naturally be expected to be paid for him, during the years mentioned.     .

"In considering the question of the value of services, the jury have a right to consider, from the testimony there is in the case, what would probably be the number of years that the boy would attend school for the purpose of obtaining an education to fit himself for any particular line of work; and if, during a certain number of years of his life, he was not able to earn any money, or any great amount of money, but, during such years, whether it would or would not be probable that money would have to be paid out for his care, keeping, and clothing; then, as

he grew older, he would be able to earn more money, but still be obliged to pay for his keeping and clothing and ordinary necessary expenses; all these things should be considered by the jury in determining what the net value of his service would be, if anything, for the whole period of time from his accident up to the time he was 21 years of age; and if, in considering all these facts, the jury believe that his services would not be worth anything in cash, then they are not entitled to find any damages beyond nominal damages in this case.

"In considering this question of damages, the jury is not to take into consideration anything except the question of what his probable services would be worth from the time of his injury up to the age of 21 years, over and above his expenses as above explained, if he had lived. The jury cannot take into consideration, nor be in any way swayed in this case by, the grief which his death may have caused his parents, or any of his relatives, or by the loss of his society to them, or of any other facts in the case except that of loss of services; and consequently, however sad this accident may have been to his family, and however much sorrow may have been caused by such accident and by his death, is of no sort of consequence to this jury in determining the question that is before you to determine as to damages, if you come to a point of determining the matter of damages. If you find for the plaintiff, the verdict must be one based entirely upon monetary consideration for the value of services, less expenses, as above explained; and no other thing must enter into your consideration on the question of damages to be allowed. The law does not allow damages in this kind of a case for loss of companionship of the deceased, for sorrow on account of his death, for expenses for his burial, or for any other thing whatever except for the loss of services until he is 21 years of age, and no longer; and the jury must be governed by this law as given by the court, and apply no other rule to it.

"Upon this question of damages I further instruct you that, if you find the plaintiff is entitled to recover, you should take into consideration the probability of the deceased living to be 21 years of age; also the probability of his father and mother living until the boy attained 21 years of age; also any liability to illness, and the liability of his inability to earn money, or for any other reasons which the testimony may show,—inability to get employ-

ment, injury to any part of his person which might impair one's ability to earn money; you should, on this question, consider everything that would be likely to affect, favorably or unfavorably, his power to earn money.

"On this question, gentlemen of the jury, I think it best to read you the following provision of law, which now exists, and which counsel on both sides in their argument to you commented upon, so that there will be no mistake as to the law; and, as both counsel seem to differ a little about it, in view of that difference in the statement of the law to you, I thought best for me to read this section of the statute, which is plain English, and you can understand it fully as well or better than if I tried to state it to you in general terms. [The judge read to the jury section 4847, 2 Comp. Laws, requiring children within school ages to attend the public schools.]

"You should weigh, gentlemen of the jury, with great care, this testimony upon the question of this boy's claimed adaptabilities to draw and carve, if you find he had such adaptabilities, and you should only allow damages upon this branch—if you come to the question of damages— after the most careful consideration of the testimony bearing upon the question, and after satisfying yourselves from the testimony that he had—if he had—such special adaptability to draw and carve as claimed by the plaintiff in this case, and, further, after being fully satisfied from the evidence that, if he did have such adaptability, he would have followed the business until arriving at 21 years of age. Would he have made a good workman at drawing, carving, etc.? Would he have followed it? Would he have received such wages as the witnesses testify are now being paid to draftsmen? Consider all these questions, all the testimony, all the matters and contingencies weighing for and against the question of his special adaptabilities, and decide it according to your own good judgment. Unless you are satisfied that he would have earned something because of this claimed drawing ability or his ability to carve, you must not allow anything for it. Now, I am not telling you, and do not mean by this instruction, that you should not nor that you should allow anything on this account. I leave it to you wholly as a question of fact, and simply give you that instruction in view of that feature in this case, so that you will consider that branch of the case with great care."

It is insisted the following portions of the charge are incorrect:

"In considering the question of how much the services of the said Leo Snyder would probably have been worth from the time of his injury up to the time that he was 21 years of age, over and above the expense of taking care of and clothing him and educating him in a manner which was probable that he would have been educated," etc.

"In considering the question of the value of services, the jury have a right to consider, from the testimony there is in the case, what would probably be the number of years that the boy would attend school for the purpose of obtaining an education," etc.

It is said the judge left the jury to speculate as to how many years of his minority the deceased would probably have attended school had he lived, and that the jury were not entitled to speculate upon the probable kind of an education the boy would have received, and the expense of it, and allow the railway company to offset it against his earnings.

These portions of the charge should be read in connection with what preceded and followed them. When that is done, we think the criticism is not well taken. The future of the boy was problematical. No definite plans had been made for his education. He had earned small sums of money, but it could not be said what sums he would be able to earn in the future. The testimony was not definite, nor was it conclusive. It was for the jury to take into consideration. We think the instruction was in harmony with the cases of *Cooper* v. *Railway Co.*, 66 Mich. 261 (33 N. W. 306, 11 Am. St. Rep. 482); *Rajnowski* v. *Railroad Co.*, 74 Mich. 20 (41 N. W. 847); *Hurst* v. *Railway*, 84 Mich. 539 (48 N. W. 44); *City of Elwood* v. *Addison*, 26 Ind. App. 28 (59 N. E. 47).

The following portion of the charge was objected to:

"The jury is instructed that the fact, if it be a fact, that the boy Leo Snyder was in the habit of making pictures or drawings, or was interested in that line of work, would not by any means establish as a fact in this case

that he would at some future time be able, through any such work, to earn any large sums of money."

It is said that by this instruction the court invaded the province of the jury, and indicated what the evidence established. We cannot agree with counsel in this conclusion, but think the statement of the court is justified by the facts and experiences of daily life. While it may be probable that a bright boy, selecting a calling for which he has a natural aptitude, will be successful in that calling, it does not follow as an established fact that a bright boy, who has shown an aptitude for a given calling, will follow that aptitude, select the calling, and make a success therein. When the judge followed this portion of his charge by instructing the jury that this testimony might be considered in connection with all the other testimony in determining the earning capacity of the boy, we think he properly instructed them.

The other criticisms of the charge have been considered, but will not be discussed.

We now come to the question, Did the court err in refusing a new trial because the verdict was inadequate ? In giving his reasons for refusing a new trial the circuit judge said:

"Plaintiff insists that, the jury once determining that plaintiff was entitled to damages, then the jury was legally obliged to find damages larger in amount than were found. If the testimony in this case had all, or practically all, tended to show a minimum sum as a value of the services of plaintiff's intestate over and above his care, maintenance, and support, and the jury had found a sum for the plaintiff much below a minimum sum as shown by the testimony, there might, under such circumstances, be good reason for urging that this verdict was inadequate. Defendant offered several witnesses who testified that a boy such as plaintiff's intestate would earn nothing for his parents, over and above his maintenance and support, up to the time he became 21 years of age; so that there was testimony from which the jury could legitimately decide that plaintiff should recover nothing, or that he should recover some sum between nothing and the highest

amount warranted by the testimony of plaintiff's witnesses. In a case such as this one, and under the same state of facts, a court ought to hesitate long before setting aside a verdict of a jury on a claim that the damages allowed are too small, and, before setting aside a verdict on that ground, the court should be able to conclude from the testimony, and be fully satisfied, that the testimony does not warrant the verdict as to the amount. I cannot say, from the testimony in this case, that the jury was not entirely justified in fixing the amount of the damages at $250, and must hold the amount as found fully sustained by the testimony."

In *Cooper* v. *Railway Co.*, 66 Mich. 261 (33 N. W. 306, 11 Am. St. Rep. 482), Justice CHAMPLIN, in speaking for the court, said:

"The statute authorizes the jury, in every case of this kind, to give such amount of damages as they shall deem fair and just to the persons who may be entitled to the same when recovered. Under this statute the jury are not warranted in giving damages not founded upon the testimony, or beyond the measure of compensation for the injury inflicted. They cannot give damages founded upon their fancy, or based upon visionary estimates of probabilities or chances. The rule of damages in actions for torts does not apply to actions of this kind. The statute gives the right to damages; but it has been held, with rare exceptions, that they must be confined to those damages which are capable of being measured by a pecuniary standard. Cooley, Torts, 271, and cases cited in note 2."

See, also, *Rajnowski* v. *Railroad Co.*, 74 Mich. 20 (41 N. W. 847); *Hurst* v. *Railway*, 84 Mich. 539 (48 N. W. 44.

There was no testimony from which the earning capacity of this boy could be computed to a mathematical certainty. It was a question about which different persons might and would disagree. Such testimony as the parties were able to produce was offered on each side. The weight of that testimony, its credibility, and the conclusions to be drawn from it were for the jury.

There is a discussion of when the circuit judge ought to grant a new trial in *Wheeler* v. *Jenison*, 120 Mich. 422

(79 N. W. 643), and it will not be necessary to repeat what was said there.   We are not satisfied the court erred in the exercise of his discretion in refusing a new trial.

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.