NELSON DELONG AND JAMES O'HARA V. THE MUSKEGON
BOOMING COMPANY.

*Principal and agent—Employment of attorneys—Estoppel—Evidence—Conduct of counsel.*

1. The questions involved in this case are the authority of the defendant's book-keeper to employ plaintiffs to defend garnishment proceedings prosecuted against the defendant, and its knowledge that plaintiffs were conducting such suit in its behalf; upon both of which it is held there was testimony warranting the charge of the court, and sufficient to go to the jury.

2. It was reversible error to refuse to permit defendant's president to testify why he did not employ counsel in the suit after being advised of its progress, and of the appearance of plaintiffs as attorneys for defendant therein.

3. The remark of one of the plaintiffs in his argument to the jury, that he "could point to some other cases where the defendant had captured men's logs and never paid for them," was improper, and should have been rebuked by the court; but the Court are not prepared to hold that it is reversible error.

Error to Muskegon. (Dickerman, J.) Submitted on briefs October 7, 1891. Decided November 13, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*DeLong & O'Hara,* in *pro. per.*

MORSE, J. Plaintiffs sued for professional services in the Muskegon circuit court, and recovered judgment.

The chief controversy upon the trial was the authority of one William Foster, at that time book-keeper of the defendant corporation, to employ the plaintiffs. The defendant requested the circuit judge to direct a verdict

in its favor, on the ground that there was no competent proof tending to show plaintiffs' employment; that Foster had no power to hire them; and that none of the officers of the defendant having such authority consented to or had knowledge of plaintiffs' employment or services in defendant's behalf.

The services claimed were rendered in a garnishee suit, and were given in justice's, circuit, and Supreme court. Mary Pettit sued William Squiers, an employé of defendant, in justice's court, and garnished the defendant. The garnishee summons was served on Foster, who filed a disclosure for defendant, stating that it was indebted to Squiers in the sum of $13.04 for personal labor. Squiers claimed that he was a householder, within the meaning of the statute, and claimed an exemption of the money due him from defendant. Squiers was defeated in the principal suit. A summons to show cause was issued against the defendant, and served upon Foster. Plaintiffs were the attorneys for Squiers in the principal suit. Plaintiffs also appeared for defendant in the garnishee suit. Mr. O'Hara testified that Foster asked him to do this, and look after the interests of the defendant company. The case was tried, and judgment obtained by the plaintiff, Mrs. Pettit. Plaintiffs in this case then removed the garnishee proceedings by *certiorari* to the circuit court, where the judgment against the defendant was reversed. Mrs. Pettit then sued out a writ of error to the Supreme Court, where the judgment of the circuit court was sustained. *Pettit v. Booming Co.*, 74 Mich. 214.

When the suit was removed from justice's court by *certiorari* the defendant made the usual bond, but Foster took from Squiers and his brother, who was also in defendant's employ, an agreement in writing that the company might keep back their wages then due, and to become due, in a sufficient amount to pay all costs that

the defendant might suffer by reason of such bond.    The bond was signed, "Thos. Monroe, Secretary, per Foster." Mr. O'Hara swears that Foster authorized him to take out the writ of *certiorari*.    Before the case was argued in the circuit, the Squiers quit the employment of the defendant, and $38.27 of their wages was retained by the company.    At that time Foster served the following notice upon plaintiffs:

"You will please withdraw this suit, as Wm. Squiers and his brother have left our employ and the city.
                         "Yours truly,
                              "MUSKEGON BOOMING COMPANY,
                                                   "FOSTER."

Mr. O'Hara saw Foster, and told him what the effect of a withdrawal would be, and Foster told him to go ahead.    After Mrs. Pettit sued out her writ of error to this Court, Foster told O'Hara to follow it, and, if the defendant prevailed, the company would pay DeLong & O'Hara a good reasonable sum for trying the case in this Court; if Mrs. Pettit won, the plaintiffs were to receive nothing for their services.    During the continuance of these proceedings papers in the case were served upon Joseph Davitts, who was in charge of defendant's office, by the attorneys of Mrs. Pettit.    Plaintiffs took a printed copy of the record in the Supreme Court to defendant's office, and gave it to Foster, who directed that the briefs be printed at the Muskegon Chronicle office, and, upon plaintiffs approving the bill for printing, the defendant would pay it.    It was paid for by defendant, through Foster.    After the briefs were printed, O'Hara testifies that he took one of them down to defendant's office. Foster was not there, and he gave it to Mr. Bell, who handed it to Mr. Monroe, the secretary of the company, who was in the office.    Mr. Monroe swears that he has no recollection whatever of any occurrence of this kind,

and that he did not know of any employment of the plaintiffs until they sent in their bill. Mr. O'Hara also testifies that, when the case was likely to be on call in the Supreme Court, he told Foster that they wanted some money to go to Lansing, and Foster gave him $25. Defendant claims that this money was paid out of the wages kept back from the Squiers brothers. O'Hara also says that he talked about the suit with one Tait in the presence and. hearing of John W. Blodgett, the president of the company. Mr. Blodgett testifies that he first had notice of the suit in Chicago; that he picked up a Muskegon paper, and saw that the case of *Pettit v. Muskegon Booming Company* was on call in the circuit court of that county. It was his business at that time to retain counsel. On his return to Muskegon within two days he investigated the matter by making inquiries of Foster and Brakeman. After such investigation he did not employ counsel. He was not permitted to state why he did not hire any attorney. In his testimony Blodgett made no reference to O'Hara's evidence as to the talk with Tait in his presence, nor did he testify as to his knowledge of the case being in the Supreme Court.

It appears from the. testimony of Mr. Monroe, the secretary of the company, that Mr. Bell, who now occupies the place of Mr. Foster, has charge of the financial matters in the office; that Bell acts as his assistant, and draws orders of the secretary upon the treasurer of the company, and signs Monroe's name to the same; that he takes the secretary's place in his absence, and manages the business for him, except in cases where he is in doubt, when he waits for instructions; that Foster had the same authority as Bell now has, and acted accordingly; that he had a right to act as assistant secretary in certain lines, in the ordinary

transaction of the company's business. He afterwards defined this to be to—

"Receive the reports as they come in from the heads of the different departments; receipt for logs, and the deliveries of them; make up the weekly statements and averages, and send them to the different owners; receive the pay for the work; pay the men; pay the bills that were audited by the different foremen; and so on."

That he never had any authority to employ counsel or attorneys in any case; that the president and secretary attended to that business; and that he never authorized Foster to employ DeLong & O'Hara in the Pettit case.

The court instructed the jury upon this branch of the case substantially as follows:

"Defendant, Squiers, in the principal suit had the right to defend for the Muskegon Booming Company, and the said booming company would have no right to decline to permit said Squiers, or such attorney as he might select, to appear in said cause.

"The simple appearance of DeLong & O'Hara as attorneys for the booming company in said garnishee case is no evidence of their employment by the defendant.

"Services rendered by the plaintiffs in said garnishee case, without the knowledge of some officer of the defendant, and without their consent, either express or implied, would imply no promise on the part of the defendant to pay for such services.

"If you should be satisfied, from a fair preponderance of the testimony, that Mr. Foster had authority to employ the plaintiffs for and in behalf of the booming company, the defendant, and did employ them, and authorized them to conduct the suit for and in behalf of the booming company, the defendant, why, then, they would be entitled to recover what you may find from the testimony their services were reasonably worth.

"If you should not so find, it would be your duty still to consider the other branch of the case, whether or not the officer or officers of the booming company, the defendant, at that time knew—had knowledge—that the plaintiffs were doing this work, and claiming to do it for

them as their attorneys, and that is a matter for you to scan very carefully, and for this reason: the illustration made use of by Mr. O'Hara is probably correct, but you should scan the testimony of that branch of the case all the more carefully on this account and for this reason: that Mr. Squiers, the principal defendant in that suit, had a right to use the Muskegon Booming Company's name to test that question of exemption, to conduct that garnishee case in their name, and carry it on as far as he pleased, provided he did it at his own expense, and without any trouble to them. He had a perfect right to, and the mere fact that some officer or officers of the company knew that the suit was pending, and that the suit as pending was in their name or against them, would not be sufficient, because the suit might be pending in their name, and yet they not actually assisting in it, or not have been engaged in it at all. Mr. Squiers would have a right to conduct that suit, and carry it on in their name, and the mere fact that they may have known that such a suit was pending against them, a garnishee suit, would not bind them; nor would they be bound unless they knew that the suit was pending, and these attorneys were conducting it, and also knew that they were conducting it, or claimed to be, as their attorneys, —the booming company's attorneys. If they knew that, or if they had knowledge of such facts as would put them upon inquiry, and if, upon inquiry, they ascertained that this suit was pending, that the plaintiffs were conducting it, and were conducting it as the attorneys of the booming company, and then allowed them to proceed, then they would be estopped from now claiming that they were not acting as their attorneys, although they never may have been employed at all at any time, or may never have been employed by any one authorized to actually employ them. So I say, upon that branch of the case, you should consider all of these elements; because, on account of the nature of this case, and the suit being in its nature double on the start,—first the main suit, and then this garnishee suit ancillary or tacked on to the main suit,—you should consider carefully all these elements related or suggested to you here, before you undertake to pass upon that branch of the case."

We think there was testimony warranting this charge, and sufficient to go to the jury, upon both the questions

of Foster's authority and the knowledge of the company that plaintiffs were conducting the suit as the attorneys of the company.

But there was error in not permitting Mr. Blodgett to testify why he did not employ counsel in the suit after investigating the matter. As the case stood, it left Mr. Blodgett in the position of knowing that the suit was in progress, and that DeLong & O'Hara had appeared as attorneys of the company; that he knew all this, and yet took no steps to employ other counsel, or to make any protest against DeLong & O'Hara's being in apparent employment of the company. This may have prejudiced the jury, as the fact that Blodgett did not employ counsel to look after the company's interest in the suit, after investigation, is used in this Court as an argument to show that he knew of plaintiffs' employment, and consented to it. It was perhaps so used in the court below. As the reason why he did not employ other counsel would have had a material bearing upon the question of his knowledge and consent to the employment of plaintiffs, or that they were working for the company and not for Squiers, the error was a material one, and the judgment must be reversed, and a new trial granted, with costs of this Court to defendant.

We find no other errors in the record. Mr. O'Hara's remark in his argument to the jury, that he "could point to some other cases where they [meaning defendant] have captured men's logs and never paid for them," was improper, and should have been rebuked by the court; but we are not prepared to say that it was reversible error.

The record in this case is claimed to be unnecessarily long, as it seems to be a complete transcript of the stenographer's minutes. But the main question in the case was the right of the plaintiffs to recover at all upon

the entire evidence in the case.  We think that all the testimony of the extent and value of the plaintiffs' services, except in so far as the amount done had some bearing upon the knowledge of the defendant that they were being performed for the company, might have been safely left out of the record; but, as there is a conflict as to who is responsible for the condition of the record, we shall order no deduction of costs on that account.

The other Justices concurred.