## MAGDALENA WILSON v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation.

### (153 N. W. 429.)

**Personal injury action — verdict in — uncertainty of.**

1. In a personal injury action the jury returned the following verdict: "We, the jury, in the above entitled action, find for the plaintiff, and against the defendant, and assess the damages in the sum of $2,400, $109.25 doctor bill, 7 per cent interest on damages from October 4, 1912, to date." At the request of the plaintiff the court entered judgment allowing interest merely on the $2,400 item. *Held*, that the uncertainty of the verdict, if any, is no ground for the reversal of the judgment.

**Tort action — damages — wrongful act — proximate injuries — anticipated — immaterial.**

2. In a tort action damages can be recovered for injuries which proximately follow from the wrongful act, whether such injuries were or could have been anticipated or not.

---

Note.—Generally, as to the proximate cause of damage caused by fire, see notes in 21 L.R.A. 259, and 36 Am. St. Rep. 823. And as to negligently setting out fire as proximate cause of injury to one burned while seeking to protect his property, see note in 15 L.R.A. (N.S.) 819.

As to the right to recover for physical injury resulting from fright caused by a wrongful act, see notes in 3 L.R.A. (N.S.) 49; 22 L.R.A. (N.S.) 1073; and 24 L.R.A. (N.S.) 1159. As to fright as an element of damages, see note in 77 Am. St. Rep. 859.

**Negligence — acts of — if forbidden by law — or such as might cause injuries to be anticipated.**

3. An act is negligent and furnishes the foundation for an action in tort if the same is forbidden by law or the person doing it might reasonably anticipate that it might be injurious to someone. It is not necessary, however, that that someone should be the person who is actually injured.

**Contract — obligation not arising out of breach of — measure of damages — detriment proximately caused.**

4. For a breach of an obligation not arising from contract, and except when otherwise provided by the Code of North Dakota, the measure of damages is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not. See § 7165, Comp. Laws 1913.

**Prairie fire — railway company — negligently caused by — efforts of person to extinguish — injuries resulting therefrom — damages recoverable — negligence or carelessness of such person — question for jury.**

5. Where a prairie fire is negligently caused by a railway company, and the wife of a homesteader, who is left at home alone with her young daughter, uses every reasonable effort to put out such fire, and in doing so overworks and strains herself so that permanent injuries ensue, she can recover damages from such company therefor, provided that she did not unreasonably and recklessly expose herself to such injury. Whether she was reckless and negligent in this respect is primarily a question of fact for the jury, and not of law for the court to pass upon.

**Appeal — record on — instructions to jury — no exceptions — presumption.**

6. Where the record on appeal contains no exceptions to the instructions of the jury, and omits such instructions entirely, the presumption will be that the jury was properly instructed on all of the phases of the case.

**Married woman — homestead — prairie fire — efforts to extinguish — fee title in property — not necessary.**

7. It is not necessary in order that a married woman may recover damages for injuries sustained in an attempt to stop a prairie fire which threatens her home, that such woman should own the fee of the property, and the fact that she has merely a homestead interest in the same is no bar to her recovery.

**Rule of damages — fright — tort — action — efforts to stop fire — reasonableness — acts of prudent person.**

8. Though as a rule damages which are occasioned by fright alone cannot be recovered in a tort action without proof of a physical injury, the mere fact that a person may have been frightened by fire, and that such fright may have had some influence in inducing her to fight against it, does not preclude a recovery for injury sustained in such attempt, where the exertion put forth

was the exertion that a reasonably prudent person would have put forth under like circumstances.

**Tort — injured party — duty of — to reduce damages — recovery.**

9. Where a tort has been committed it is the duty of the injured party to use reasonable efforts to avoid the consequences thereof, and to reduce the damages sustained thereby, and if in such reasonable attempt he is injured damages may be recovered therefor.

**Negligence — contributory negligence — jury — questions for.**

10. The questions of negligence and of contributory negligence are primarily questions of fact for the jury to pass upon.

**Answer — responsive in part — motion to strike — denial not sufficient cause for setting aside verdict.**

11. Where a part of an answer is responsive, and a defendant objects to the whole answer as being not responsive, and moves to have the same stricken out, the verdict will not be set aside because of the failure of the court to so order.

**Testimony — introduction of — objections to — rulings upon — errors.**

12. Various objections to rulings on the introduction of the testimony examined and *held* not to constitute reversible error.

Opinion filed May 12, 1915.

Appeal from the District Court of Stutsman County, *Coffey,* J.

Action to recover damages for injuries occasioned by overexertion in attempting to put out a prairie fire.

Judgment for plaintiff. Defendant appeals.

Affirmed.

*Watson & Young* and *E. T. Conmy,* for appellant.

Where improper testimony for plaintiff is allowed over objection, it is the rule that prejudice must be presumed from the error, and plaintiff must affirmatively show that the testimony was harmless. McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685; Moore v. Booker, 4 N. D. 543, 62 N. W. 607; Miller v. Durst, 14 S. D. 587, 86 N. W. 631.

Relevant testimony is that which conduces to prove a hypothesis which, if sustained, would logically influence the issue, and hence it is relevant to put in evidence any circumstances tending to make the proposition at issue either more or less improbable. Ward v. Young, 42 Ark. 542; Shannon v. Kinny, 1 A. K. Marsh. 3, 10 Am. Dec. 705; Jones, Ev. §§ 141–146; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; 13 Cyc. 24; Gardner v. Detroit Street R. Co. 99 Mich.

182, 58 N. W. 49, 4 Am. Neg. Cas. 163; Warren v. Wright, 103 Ill. 298; Houston & T. C. R. Co. v. Ritter, 16 Tex. Civ. App. 482, 41 S. W. 753; Hood v. Chicago & N. W. R. Co. 95 Iowa, 331, 64 N. W. 261.

The verdict of the jury must be for a fixed and certain sum, in order to sustain a judgment. Rev. Codes 1905, § 7035, Comp. Laws 1913, § 7634; Watson v. Damon, 54 Cal. 279; 2 Thomp. Trials, § 2642; 2 Elliott, Gen. Pr. § 947; Mitchell v. Geisendorff, 44 Ind. 358; Educational Asso. v. Hitchcock, 4 Kan. 39; Thompson v. Shea, 4 McCrary, 93, 11 Fed. 847; Hallum v. Dickinson, 47 Ark. 120, 14 S. W. 477; Parker v. Lake Shore & M. S. R. Co. 93 Mich. 607, 53 N. W. 834; Buck v. Little, 24 Miss. 463; Fiore v. Ladd, 29 Or. 528, 46 Pac. 145; Newton v. St. Louis & S. F. R. Co. 168 Mo. App. 199, 153 S. W. 495; Weston v. Gilmore, 63 Me. 493; Wertz v. Cincinnati, H. & D. R. Co. 11 Ohio Dec. Reprint, 872; Lake v. Hardee, 57 Ga. 459.

The jury must correct its own verdict when necessary, under proper instructions from the court. Cookville Coal & Lumber Co. v. Evans, — Tex. Civ. App. —, 135 S. W. 750.

A new trial will be granted where the verdict is uncertain as to the amount found to be due plaintiff. Goosely v. Holmes, 3 Call Va. 424; Dorsett v. Crew, 1 Colo. 18; Holmberg v. Hendry, 2 Cal. Unrep. 650, 10 Pac. 394; Macoleta v. Packard, 14 Cal. 178; Minot v. Boston, 201 Mass. 10, 25 L.R.A.(N.S.) 311, 86 N. E. 783; Bashford v. Kendall, 2 Ariz. 6, 7 Pac. 176; Halum v. Dickinson, 47 Ark. 120, 14 S. W. 777; Voves v. Great Northern R. Co. 26 N. D. 110, 48 L.R.A.(N.S.) 30, 143 N. W. 760.

Defendant's negligence in all such cases must be the proximate cause of the injury. Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 470, 24 L. ed. 256, 257; Seale v. Gulf, C. & S. F. R. Co. 65 Tex. 274, 57 Am. Rep. 604; Logan v. Wabash R. Co. 96 Mo. App. 461, 70 S. W. 734; Pittsburg Southern R. Co. v. Taylor, 104 Pa. 306, 49 Am. Rep. 580; West Mahanoy Twp. v. Watson, 112 Pa. 574, 56 Am. Rep. 336, 3 Atl. 866; Ewing v. Pittsburgh, C. C. & St. L. R. Co. 147 Pa. 40, 14 L.R.A. 666, 30 Am. St. Rep. 709, 23 Atl. 340.

Defendant is not liable for consequences of negligence which were unintended, and which could not be foreseen by an ordinarily prudent person. New Orleans & N. E. R. Co. v. McEwen & Murray, 49 La. Ann. 1184, 38 L.R.A. 134, 22 So. 675; Cleveland, C. C. & St. L. R. Co.

v. Lindsay, 109 Ill. App. 533; Currier v. McKee, 99 Me. 364, 59 Atl. 442, 3 Ann. Cas. 57; Bannon v. Pennsylvania R. Co. 29 Pa. Super. Ct. 231; Wabash, St. L. & P. R. Co. v. Locke, 112 Ind. 404, 2 Am. St. Rep. 193, 14 N. E. 391; Sjogren v. Hall, 53 Mich. 274, 18 N. W. 812; Garraghty v. Hartstein, 26 N. D. 148, 143 N. W. 392; Fox v. Borkey, 126 Pa. 164, 17 Atl. 604.

The negligence of defendant, if any, in setting the fire, is not the proximate cause of the injury she sustained. Such injury was the direct result of fright, terror, alarm, and mental anxiety, unaccompanied by any physical injury. 3 Elliott, Railroads, § 1247; Henderson v. Weidman, 88 Neb. 813, 130 N. W. 579; American Nat. Bank v. Morey, 113 Ky. 857, 58 L.R.A. 956, 101 Am. St. Rep. 379, 69 S. W. 760; Birmingham Waterworks Co. v. Martin, 2 Ala. App. 652, 56 So. 832; White v. Sander, 168 Mass. 296, 47 N. E. 90, 2 Am. Neg. Rep. 573; Kalen v. Terre Haute & I. R. Co. 18 Ind. App. 202, 63 Am. St. Rep. 343, 47 N. E. 694; Canning v. Williamstown, 1 Cush. 451; Salina v. Trosper, 27 Kan. 544; Atchison, T. & S. F. R. Co. v. McGinnis, 46 Kan. 109, 26 Pac. 453; Morse v. Duncan, 14 Fed. 396; Wyman v. Leavitt, 71 Me. 227, 36 Am. Rep. 303; Johnson v. Wells, F. & Co. 6 Nev. 224, 3 Am. Rep. 245; Indianapolis & St. L. R. Co. v. Stables, 62 Ill. 313; Terre Haute & I. R. Co. v. Brunker, 128 Ind. 542, 26 N. E. 178; Haile v. Texas & P. R. Co. 23 L.R.A. 774, 9 C. C. A. 134, 23 U. S. App. 80, 60 Fed. 557; Missouri P. R. Co. v. Cox, 2 Tex. App. Civ. Cas. (Willson) 217; Nelson v. Crawford, 122 Mich. 466, 80 Am. St. Rep. 577, 81 N. W. 335; Russell v. Western U. Teleg. Co. 3 Dak. 315, 19 N. W. 408.

If anxiety and suspense of mind alone are not a ground for recovery, then the effects furnish no ground. Pierce, Railroads, 1881 ed. 302; Indianapolis, B. & W. R. Co. v. Birney, 71 Ill. 391; Hobbs v. London S. W. R. Co. L. R. 10 Q. B. 111, 44 L. J. Q. B. N. S. 49, 32 L. T. N. S. 352, 23 Week. Rep. 520, 5 Eng. Rul. Cas. 38; Pullman Palace Car Co. v. Barker, 4 Colo, 344, 34 Am. Rep. 89, 9 Am. Neg. Cas. 131; Francis v. St. Louis Transfer Co. 5 Mo. App. 7; Nelson v. Atlantic & P. R. Co. 68 Mo. 593, 4 Am. Neg. Cas. 500, 2 Redf. Railways, 5th ed. 262; Trigg v. St. Louis, K. C. & N. R. Co. 74 Mo. 147, 41 Am. Rep. 308; Spade v. Lynn & B. R. Co. 168 Mass. 285, 38 L.R.A. 512, 60 Am. St. Rep. 393, 47 N. E. 88, 2 Am. Neg. Rep. 566; White v. Sander, 168 Mass. 296, 47 N. E. 90, 2 Am. Neg. Rep. 573;

Smith v. Postal Teleg. Cable Co. 174 Mass. 576, 47 L.R.A. 323, 75 Am. St. Rep. 374, 55 N. E. 380, 7 Am. Neg. Rep. 54; Victorian R. Comrs. v. Coultas, L. R. 13 App. Cas. 222, 57 L. J. P. C. N. S. 69, 58 L. T. N. S. 390, 37 Week. Rep. 129, 52 J. P. 500, 8 Eng. Rul. Cas. 405; Ewing v. Pittsburgh, C. C. & St. L. R. Co. 147 Pa. 40, 14 L.R.A. 666, 30 Am. St. Rep. 709, 23 Atl. 340; Lombard v. Lennox, 155 Mass. 70, 31 Am. St. Rep. 528, 28 N. E. 1125; Fillebrown v. Hoar, 124 Mass. 580; Meagher v. Driscoll, 99 Mass. 281, 96 Am. Dec. 759; Haile v. Texas & P. R. Co. 23 L.R.A. 774, 9 C. C. A. 134, 23 U. S. App. 80, 60 Fed. 557; Joch v. Dankwardt, 85 Ill. 331, 10 Mor. Min. Rep. 690; Canning v. Williamstown, 1 Cush. 451; Western U. Teleg. Co. v. Wood, 21 L.R.A. 706, 6 C. C. A. 432, 13 U. S. App. 317, 57 Fed. 471; Renner v. Canfield, 36 Minn. 90, 1 Am. St. Rep. 654, 30 N. W. 435; Johnson v. Wells, F. & Co. 6 Nev. 224, 3 Am. Rep. 245; Wyman v. Leavitt, 71 Me. 227, 36 Am. Rep. 303; Mitchell v. Rochester R. Co. 151 N. Y. 107, 34 L.R.A. 781, 56 Am. St. Rep. 604, 45 N. E. 354, 1 Am. Neg. Rep. 121.

Where the injury is purely accidental, and results from circumstances over which defendant had no control, and which could not have been reasonably anticipated, the damages are too remote to warrant a recovery. Mitchell v. Rochester R. Co. supra; Sheldon v. Hudson River R. Co. 29 Barb. 228; Longabough v. Virginia City & Truckee R. Co. 9 Nev. 296; Smith v. Hannibal & St. J. R. Co. 37 Mo. 295; Omaha & R. Valley R. Co. v. Clark, 35 Neb. 867, 23 L.R.A. 509, 53 N. W. 970; Kilpatrick v. Richardson, 37 Neb. 731, 56 N. W. 481; White v. Chicago, M. & St. P. R. Co. 1 S. D. 330, 9 L.R.A. 824, 47 N. W. 146; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Whitney v. Clifford, 57 Wis. 156, 14 N. W. 927; Shearm. & Redf. Neg. § 57, 58; Nason v. West, 78 Me. 253, 3 Atl. 911, 5 Am. Neg. Cas. 273; Meehan v. Great Northern R. Co. 13 N. D. 443, 101 N. W. 183; Scherer v. Schlaberg, 18 N. D. 421, 24 L.R.A.(N.S.) 520, 122 N. W. 1000; Garrity v. Hartstein, 26 N. D. 148, 143 N. W. 390.

Damages in such cases cannot rest upon mere conjecture or speculation. Mitchell v. Rochester R. Co. 151 N. Y. 107, 34 L.R.A. 781, 56 Am. St. Rep. 604, 45 N. E. 354, 1 Am. Neg. Rep. 121.

*Knauf & Knauf,* for respondent.

There can be no presumption of prejudice arising from the testimony of a witness who saw the fire burning, as to the ground it covered, its direction, the location of plaintiff's home, and similar facts.    Such facts are relevant.    But defendant's objections were general, and cannot be considered.    Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335; First Nat. Bank v. Warner, 17 N. D. 76, 114 N. W. 1085, 17 Ann. Cas. 213.

There was no proper hypothesis in the defendant's questions, and the court did not err in sustaining objections thereto.    The questions did not specifically refer to the patient in question, the plaintiff.    Pyke v. Jamestown, 15 N. D. 157, 107 N. W. 364; Ward v. Young, 42 Ark. 554.

In any event, such testimony was plainly collateral to the issues involved, and offered merely to prejudice the minds of the jury.    Galveston, H. & S. A. R. Co. v. Smith, — Tex. Civ. App.—, 24 S. W. 668; Russel v. Hearne, 113 N. C. 361, 18 S. E. 711.

The verdict of the jury is plain and certain, and devoid of any ambiguity.    Voves v. Great Northern R. Co. 26 N. D. 110, 48 L.R.A. (N. S.) 30, 143 N. W. 760.

The plaintiff did everything possible to stop the fire, and in so doing acted in a prudent and careful manner, and in accordance with her duty.    Hawley v. Sumpter Valley R. Co. 12 L.R.A.(N.S.) 526, 527 and notes and citations, 49 Or. 509, 90 Pac. 1106; Seale v. Gulf, C. & S. F. R. Co. 65 Tex. 274, 57 Am. Rep. 602.

The proximate cause of an event is that which, in a natural and continuous course, produces the event, and without which the event would not have happened.    Ingalls v. Bills, 9 Met. 1, 43 Am. Dec. 346, 9 Am. Neg. Cas. 426; Page v. Bucksport, 64 Me. 51, 18 Am. Rep. 239; Harris v. Clinton Twp. 64 Mich. 447, 8 Am. St. Rep. 842, 31 N. W. 425; Liming v. Illinois C. R. Co. 81 Iowa, 250, 47 N. W. 66; Hockstedler v. Dubuque & S. C. R. Co. 88 Iowa, 236, 55 N. W. 74; Rajnowski v. Detroit, B. C. &. A. R. Co. 74 Mich. 20, 41 N. W. 847, 78 Mich. 681, 44 N. W. 335; Berg v. Great Northern R. Co. 70 Minn. 272, 68 Am. St. Rep. 524, 73 N. W. 648.

The injury must result from an actual contact with the fire, or from over exertion in fighting it, and in either case is a proximate result.

Glanz v. Chicago, M. & St. P. R. Co. 119 Iowa, 611, 93 N. W. 575; Rajnowski v. Detroit, B. C. & A. R. Co. 74 Mich. 20, 41 N. W. 848, 78 Mich. 681, 44 N. W. 335; Sedgw. Damages, 66; Louisiana Mut. Ins. Co. v. Tweed, 7 Wall. 49, 19 L. ed. 66.

Every person is bound to use diligence to save himself from injury by the negligent act of another. Plaintiff in fighting the fire, and in back-firing, was acting strictly in the line of duty,—not only in saving the property, but in saving the defendant from damages. Little v. McGuire, 43 Iowa, 447; Kiernan v. Heaton, 69 Iowa, 136, 28 N. W. 478; Raridan v. Central Iowa R. Co. 69 Iowa, 527, 29 N. W. 599; Griggs v. Fleckenstein, 14 Minn. 81, Gil. 62, 100 Am. Dec. 199, 1 Am. Neg. Cas. 311; Liming v. Illinois C. R. Co. 81 Iowa, 246, 47 N. W. 66; McKenna v. Baessler, 86 Iowa, 197, 17 L.R.A. 311, 53 N. W. 103; Illinois C. R. Co. v. Siler, 229 Ill. 390, 15 L.R.A.(N.S.) 819, 82 N. E. 362, 11 Ann. Cas. 368; Berg v. Great Northern R. Co. 70 Minn. 272, 68 Am. St. Rep. 524, 73 N. W. 648; Wasmer v. Delaware, L. & W. R. Co. 80 N. Y. 212, 36 Am. Rep. 609; Glanz v. Chicago, M. & St. P. R. Co. 119 Iowa, 611, 93 N. W. 575.

BRUCE, J.   The complaint in this action alleges that the defendant company negligently started a prairie fire, and that "for the purpose of protecting her said property and buildings this plaintiff, then aged fifty-two years, worked in a diligent and proper manner to protect said property, and in such a manner as an ordinarily prudent and diligent person and woman would have done, and did carry out from said house and on plowed ground and on safe premises, bedding, clothes, and furniture, and did then and there carry water and assist in preventing said fire from burning up said grain, hay, buildings, house, and property, as any woman in the exercise of due diligence, prudence, and care should do in aiding to protect the same under such threatened destruction, and while in the exercise of due care in the premises aforesaid, this plaintiff became so greatly heated, exercised, and excited, and so greatly worked, as to cause her immediately thereafter to be sick, sore, and lame, and to become permanently injured in her back, head, mind, limbs, body, and nerves, rendering her thereby permanently sick, sore, lame, and a nervous wreck, to her damage in the sum of $2,500, and

a necessary cost for physicians' and surgeons' service, and medicines, board, care, and railroad fare expense in the further sum of $500."

Both at the conclusion of the plaintiff's case and of that of the defendant, the defendant moved the court to direct a verdict in its favor on the following grounds: "First, there is no testimony in this case to show that this defendant is guilty of any negligence which proximately caused the injury to the plaintiff here; and secondly, the undisputed testimony shows that if this plaintiff suffered any injury it was caused by her own negligence, and her own negligence contributed thereto; thirdly, the undisputed testimony shows that the injury to this plaintiff, if any, was occasioned by, and is the direct result of, fright or fear, unaccompanied by any physical injuries whatsoever, and the negligence of this defendant, if any, is not the proximate cause thereof, and this plaintiff cannot recover, the damages being too remote and speculative." These motions were denied. The jury returned a verdict in favor of the plaintiff, and the defendant has appealed.

The principal questions to be determined are (1) whether a married woman who attempts to protect the family property and homestead against a prairie fire which is negligently started may recover damages against the wrongdoer for injuries which arise from her overexertion in such attempt; (2) whether there is any competent proof in the record that the defendant was guilty of any negligence which proximately caused the injury. There are also several minor exceptions to the rulings upon the evidence which will be considered later. There is also to be determined in this case, and preliminary thereto, the fact as to whether there is any evidence that the plaintiff suffered any physical injury other than that which was resultant upon the fright. It is also claimed that the court erred in accepting and receiving the verdict of the jury without requiring them, and instructing them to correct it, it being claimed that the verdict was uncertain, informal, and insufficient, the verdict being as follows: "We, the jury, in the above entitled action, find for the plaintiff, and against the defendant, and assess the damages in the sum of twenty-four hundred dollars ($2,400), $109.25, doctor bill, 7 per cent interest on damages from October 4th, 1912, to date."

We see no merit in the objection to the verdict of the jury. It is claimed that it is uncertain as to whether the interest should be com-

puted on the verdict as a whole, that is, on the $2,400 plus the $109.25 doctor's bill, or on the sum of $2,400 alone. The record shows that on motion of the plaintiff interest was only allowed by the court in the final judgment on the sum of $2,400. This the jury certainly intended. Whether they intend that there should also be interest allowed on the doctor's bill is immaterial here. We very much doubt if the verdict was in any way uncertain. Even if it was uncertain, defendant has no ground for complaint.

We next come to the point that the negligence of the defendant in starting the fire, if negligence there was, "was not the proximate cause of the injury, nor could it reasonably anticipate the results of said negligence." The defendant's position is stated in its brief as follows: "We will concede for the sake of the argument that this defendant railroad negligently set the fire which burned over to the land of plaintiff's husband and burned some of his property. There is no question but that under such circumstances the defendant would be liable to Mr. Wilson for the value of his property destroyed, and also for the value of his time or that of his wife spent in fighting the fire so set. The defendant, we think, must anticipate that people would get out and fight fire which was threatening to destroy their property. In fact, we believe a great many authorities hold that it is their duty to exercise ordinary care to prevent the spread of such fires and the destruction of their property by such fires. But this defendant is not bound to anticipate, and could not reasonably anticipate, that one would be so foolish as to get out and injure himself permanently in the fighting of a prairie fire of this kind. And it certainly could not anticipate that a strong, healthy woman, such as this plaintiff claims to have been before the fire, would so work or so conduct herself as to permanently impair her health. Nor could this defendant reasonably anticipate that the setting of a prairie fire of this kind would cause a person to become so frightened and scared as to injure her nervous system permanently. This is especially applicable when we consider that the fire in question was a small fire, and was put out by three men who came to the Wilson place in less than one half an hour. And it must also be remembered that the head fire, or main fire, went by at least a quarter of a mile east of the Wilson place, and the fires came up toward the buildings against the wind slowly, as all side fires do."

30 N. D.—30.

There is no doubt that some authorities may be found in support of defendant's contention, and which are based upon the erroneous assumption that only those damages can be recovered in a tort action which can be reasonably anticipated by the person who occasioned the injury at the time of his wrongdoing. These cases, however, do not express the rule which prevails in this jurisdiction, nor do they express the general rule. They are founded upon a confusion between what constitutes actionable negligence in the first place, and what should be the measure of damages in the action, provided that actionable negligence is once shown. That an act cannot be held to be negligent unless the same is forbidden by law, or the person doing it may reasonably anticipate that it might be injurious to *someone,* is true. But this goes to the question of whether there is any cause of action at all, and, even in this case, the *someone* need not necessarily be the person who is in fact injured. The question as to damages, too, is an entirely different one. The rule contended for by defendant is the rule which prevails in actions upon contract. It is not the rule which prevails in actions of tort. In contract actions, only those damages can be recovered which were anticipated at the time of the making of the contract, or were so reasonably probable that if one had thought upon the matter at all he must be presumed to have anticipated them. In tort actions, however, damages can be recovered for injuries which proximately follow from the wrongful act, whether such injury was or could have been anticipated or not.

In the case of Garraghty v. Hartstein, 26 N. D. 148, 143 N. W. 390, we quoted with approval from the opinion in Christianson v. Chicago, St. P. M. & O. R. Co. 67 Minn. 94, 69 N. W. 640, 16 Am. Neg. Cas. 314, where Judge Mitchell, in speaking for the Minnesota court, says: "What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, but is not at all decisive in determining whether that act is the proximate cause of an injury which ensues. If a person had no reasonable ground to anticipate that a particular act would or might result *in any injury to anybody,* then, of course, the act would not be negligent at all; but, if the act itself is negligent, then the person guilty of it is equally liable for all its natural proximate consequences, whether he could have foreseen them or not. Otherwise expressed, the law is that if the act is one

which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury *to others,* then he is liable for any injury proximately resulting from it, although he could not have anticipated the *particular injury* which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural·and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

This certainly expresses the rule which prevails in North Dakota, for § 7165, Comp. Laws of 1913, being § 6582, Rev. Codes 1905, provides: "For the breach of an obligation not arising from contract, the measure of damages, except when otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." See also Needham v. Halverson, 22 N. D. 594, 135 N. W. 203; Ouverson v. Grafton, 5 N. D. 281, 65 N. W. 676.

There can be no question that the defendant must have anticipated that the fire would be injurious to *someone.* The act, therefore, was negligent, and gives rise to a cause of action. The only question to be determined is whether the injury to the plaintiff was a proximate result of that act. If so, damages can be recovered therefor, even though they were not anticipated.

A reasonable effort to save one's property and to combat a prairie fire is certainly a proximate result of such fire, and of the original negligence which occasioned it. It is one's duty, indeed, to minimize and to reduce damages, and even if we adopt the idea of anticipation one must presume and anticipate in this prairie country, where not only crops, but homes and lives are at stake, that efforts will be made, and should be made, by the settlers to save their property and lives and to combat fires which are negligently started. The fighting of the fire was therefore the proximate result of the fire. Was overexertion in so doing a proximate result of such fighting, or did contributory negligence necessarily intervene at the moment proper exertion ceased and overexertion began? Plaintiff could certainly recover damages if all of the property were her own for her loss of time and services in fighting the fire, and this is on the theory of the duty of reducing the damages, if on no other. Is she precluded from recovering on the ground that she had merely a wife's homestead

interest in the premises, and that there might have been a point where she could have desisted without injury to herself, and that this point is the court's duty to locate and to determine? We hardly think that this is or should be the law. The question as to whether she unnecessarily and unreasonably exerted herself is certainly one which, under the circumstances of the case, the jury, and not the court, should have passed upon. The farm was her home. Part of the personal property and clothing in the house must certainly have belonged to her. The woman was alone on the prairie with her little girl of some thirteen years of age. She was in charge of the farm even if she did not own it. It was her home. If one lives in a rented house, is he precluded from fighting a fire which threatens it merely because he does not own the building? and has a married woman who has a homestead interest in her husband's property any lesser rights? Must and should the wife of a homesteader, who is left alone at home with her children upon the prairie while her husband is away earning his daily bread, sit idly by and allow her home and all that the family possesses be reduced to ashes, merely because the fee title to the property is in the name of her husband? Was the poet Burns's solicitude for the "wee mousie" whose nest and winter stores were destroyed by his plowshare only justifiable provided that the mouse he saw was a male, a freeholder? This cannot be the law.

In the case of Page v. Bucksport, 64 Me. 51, 18 Am. Rep. 239, the court said: "The plaintiff was driving a horse and gig over a defective bridge in the defendant town, when the horse broke through the bridge and fell. The plaintiff immediately jumped from his gig and undertook to extricate the horse from the hole in the bridge. In doing so, in the struggle of the horse to free himself, he was struck by the horse's head and personally injured thereby. He was at the time of the injury in the use of common care. The question is whether the defect in the way can be considered as the direct and proximate cause of the injury complained of. The defendants contend that it was not. Their counsel attempt to fortify this position by many plausible and interesting illustrations. There may be a good deal of sublety and refinement of argument upon questions of this kind. There can be no fixed and immutable rule upon the subject that can be applied to all cases. Much must therefore, as is often said, depend upon the circumstances of each particular case. Upon the facts of this case, we think that the defect in the

way was the proximate cause of the injury, and that the defendants are liable for the damages sustained. The foundation of this liability is the service rendered, or attempted to be rendered, by the plaintiff *for the benefit of the town,* when the injury was received. The law required such services of the plaintiff. *It was his duty to save the horse if possible.* He would have been guilty of negligence towards the·town if he had failed to make all reasonable attempts to do so. It is a general rule of law that, where a person may sustain an injury by the fault of another, common care should be used upon his part to render the injury for which the party in fault is responsible as light as possible. *He may be compensated for an injury received when in the exercise of such care and prudence, although a mistake may be made.* In Lund v. Tyngsboro, 11 Cush. 563, 59 Am. Dec. 159, it was held that a town was liable to a traveler who, in the exercise of common care and prudence, leaps from his carriage because of its near approach to a dangerous defect in the highway, and thereby sustains an injury, although he would have sustained no injury if he had remained in the carriage. The same principle was established in Ingalls v. Bills, 9 Met. 1, 43 Am. Dec. 346, 9 Am. Neg. Cas. 426, and the same doctrine was applied to the facts in the case of Stover v. Bluehill, 51 Me. 439. The defendants, however, seek to distinguish those cases from this. They admit that such a doctrine would be applicable if the injury had happened here to the horse instead of the driver. But we do not perceive that there would be any difference upon principle whether the injury was to the plaintiff's person or his property. The accident to the horse was an injury *sustained by the owner of the horse.* The plaintiff was attempting to relieve himself of an injury to his horse and thereby of an injury to himself, when the horse in his struggles struck him with his head. This view of the facts is supported by the case of Stickney v. Maidstone, 30 Vt. 738, cited upon the plaintiff's brief, which is as near a copy of the facts in this case as two cases could well be alike. We think that all which took place at the time of the accident was, as between these parties, but a single happening or event. It was but one accident."

In the case of Harris v. Clinton Twp. 64 Mich. 447, 8 Am. St. Rep. 842, 31 N. W. 425, the court said: "It is not a universal rule that the defendant is excused from liability merely because the plaintiff, knowing of the danger caused by the defendant's negligence, volun-

tarily incurs that danger. *If the defendant has so acted· as to induce the plaintiff, acting with reasonable prudence, to incur the danger, . . . the defendant is liable.*" Again, in the case of Glanz v. Chicago, M. & St. P. R. Co. 119 Iowa, 611, 93 N. W. 575, the court said: "Appellants contend that plaintiff's injuries were not the proximate result of the setting out of the fire, and that the court should have so instructed the jury. The testimony shows that there was a high wind blowing; tithat the fire was coming directly toward the house and barn on plaintiff's premises, and that in the barn there was a large amount of personal property belonging to plaintiff and her husband; and that, had the barn caught fire, the house would also have burned. It also appears that plaintiff and her husband, with others, undertook to extinguish the fire, or to stay its progress for the purpose of saving this property, and that in so doing plaintiff's clothing was partially destroyed, her person burned, and she made sick and disabled from work. The court instructed, in effect, that, if defendant was negligent in setting out the fire, it would be liable to plaintiff for *any such personal injuries received by her as were the natural and direct result of her exertions in trying to extinguish the fire and save her property,* to which she did not by her own negligence contribute; and on the question of contributory negligence gave the following: 'In respect to the question of whether the plaintiff was or was not guilty of negligence which contributed to her alleged injuries, you are instructed that the plaintiff had the right to make such reasonable exertions for the protection of her property as a reasonably prudent person would have done under like circumstances. But if she exerted herself to a greater extent or more violently than an ordinarily prudent person would have done under like circumstances, and her injuries, if any, resulted from such exertions, then, even though she acted in good faith, or under the belief that what she did was necessary, she cannot recover for such injuries, if any, to her health. In determining whether the plaintiff was or was not guilty of negligence that contributed to the alleged injury to her health, you would not be justified in finding that she was free from any negligence that contributed to her injuries, if any, from the facts alone (if they be facts) that the danger to her property was great, or appeared to be great, and that she acted in good faith, in an honest purpose to prevent the spread of the fire, and thus protect her property from destruction

or injury, for her motive or conduct, however honest or well intended, cannot be made the basis of a recovery, if, as a matter of fact, she did not act as a reasonably prudent person would have acted under like circumstances. *In determining this question, however, you should take all the facts and circumstances concerning the fire, and the acts of the plaintiff as disclosed by the evidence, into consideration.*' It is contended that the fire was not the proximate cause of plaintiff's injuries and sickness, and that, as these results were brought about by her own volition, she cannot recover. The question of proximate cause is always difficult, and, but for the case to which we shall presently refer, we should have difficulty in determining the proposition here presented. In Liming v. Illinois C. R. Co. 81 Iowa, 250, 47 N. W. 66, the exact question now before us was considered, and it was there held that a stranger who received injuries in attempting to extinguish a fire set out by a railway company, to save property from destruction, might recover from the company; that defendant's negligence in such a case was the proximate cause of an injury to the person who attempted to save property from the consequences thereof; that the injured party was entitled to recover, provided he did not negligently contribute to the results. In that case it is said, in effect, that one who, acting with reasonable prudence, voluntarily exposes himself to danger for the purpose of protecting his property, may recover for the consequent injuries he receives from the person whose wrong caused the injury *to himself, and the danger to the property he sought to protect. See also McKenna v. Baessler, 86 Iowa, 197, 17 L.R.A. 310, 53 N. W. 103. In attempting to extinguish the fire in question, plaintiff was in the strict line of her duty; and if she acted with ordinary care and prudence, there is no reason, in justice or law, why she should not recover for the injuries received. *Bound as she was by law to save herself from the consequences of defendant's negligence, the defendant should not be permitted to say that her act was entirely voluntary, and that the injuries she received did not follow proximately from its original wrong.* The Liming Case is not without support in other jurisdictions. See Rajnowski v. Detroit B. C. & A. R. Co. 74 Mich. 20, 41 N. W. 847, 78 Mich. 681, 44 N. W. 335; Berg v. Great Northern R. Co. 70 Minn. 272, 68 Am. St. Rep. 524, 73 N. W. 648. *Defendant attempts to distinguish the Liming Case from the one aat bar on the ground that in the former Liming was*

*injured by the fire itself, while here the plaintiff's sickness was due to overexertion. Admitting the difference in facts, it does not follow that there is any distinction in principle.* In either case the injury was the result of the fire, unless the party injured was doing a negligent and reckless act in attempting to extinguish the fire. *Whether or not he was guilty of contributory negligence was a question for the jury, under proper instructions.* It should not be said that defendant could not anticipate the wrong complained of. If it negligently set out a fire which endangered property, it knew that the owner was bound to make all reasonable efforts to save himself from harm; and if, in the exercise of reasonable care in the performance of this duty, he received an injury, the original fault of the defendant is something more than a condition. It was, as we view it, the efficient cause of the injury. *That injury may result from actual contact with the fire or from overexertion, and in either case is a proximate result."* See also Rajnowski v. Detroit, B. C. & A. R. Co. and McKenna v. Baessler, supra.

Again, in the case of Illinois C. R. Co. v. Siler, 229 Ill. 390, 15 L.R.A.(N.S.) 819, 82 N. E. 362, 11 Ann. Cas. 368, we find the following: "The cases which sustain the position of the appellant we think are wrong in principle, and opposed to the weight of authority. *One whose property is exposed to danger by another's negligence is bound to make such effort as an ordinarily prudent person would to save it or prevent damages to it. If in so doing, and while exercising such care for his safety as is reasonable and prudent under the circumstances, he is injured as a result of the negligence against the effect of which he is seeking to protect his property, the wrongdoer whose negligence is the occasion of the injury must respond for the damages.* It is not just that the loss should fall on the innocent victim. We regard this as the result of the authorities which we have been able to examine, aside from the two above mentioned as sustaining the position of appellant." And in Berg v. Great Northern R. Co. supra, the court also says: "Referring first to the second question, we are of opinion that, leaving out of consideration for the present the question of plaintiff's contributory negligence, there was no intervention of another independent agency inflicting the injury, to break the causal connection between the negligent act of the defendant and the injuries suffered by the plaintiffs. It may be true that if the plaintiffs had remained where they

were when they discovered the fire approaching, and made no effort to save the stacks, they would not have been injured. But, assuming that they acted with reasonable prudence and care, plaintiffs' effort to save the property was a mere condition, and not the cause of these injuries. *In making reasonable efforts for that purpose, they would be doing not only what the law authorized, but what their duty to the defendant required; and if, in doing this, they sustained injury, the defendant, which was responsible for the fire, would be liable. . . .* This doctrine has been held and applied under so great a variety of circumstances that we shall only cite two cases in which it has been applied to 'fire cases' like the present. Liming v. Illinois C. R. Co. 81 Iowa, 246, 47 N. W. 66; Rajnowski v. Detroit, B. C. & A. R. Co. 74 Mich. 20, 41 N. W. 847, and 78 Mich. 681, 44 N. W. 335. We have confined the decision to the particular facts of this case, but do not wish to be understood as holding that the rule would be different had plaintiffs attempted to save the property of another." See also Wasmer v. Delaware, L. & W. R. Co. 80 N. Y. 212, 36 Am. Rep. 609. Again in the case of Glanz v. Chicago, M. & St. P. R. Co. 119 Iowa, 611, 93 N. W. 575. Mr. Justice Deemer says: "In either case [that is, whether the plaintiff's injuries were occasioned by physical contact with the fire or by overexertion in attempting to extinguish it and save his property] the injury was the result of the fire, unless the party injured was doing a negligent or reckless act in attempting to extinguish the fire. Whether or not he was guilty of contributory negligence was a question for the jury, under proper instructions. It should not be said that defendant could not anticipate the wrong complained of. If it negligently set out a fire which endangered property, it know that the owner was bound to make all reasonable efforts to save himself from harm; and if, in the exercise of reasonable care in the performance of this duty, he received an injury, the original fault of the defendant is something more than a condition. It was, as we view it, the efficient cause of the injury. That injury may result from actual contact with the fire or from overexertion, and in either case is a proximate result."

In the case at bar the instructions are not incorporated in the record, and are not before us. We must presume, therefore, that they were correct and applicable to the case on trial, and that the questions of fright

and contributory negligence were adequately and properly submitted to the jury.

We must presume, indeed, that some such instructions were given as were given in the case of Glanz v. Chicago, M. & St. P. R. Co. supra. Concerning these instructions the Iowa court said: "The court instructed, in effect, that, if defendant was negligent in setting out the fire, it would be liable to the plaintiff for any such personal injuries received by her as were the natural and direct result of her exertions in trying to extinguish the fire and save her property, to which she did not by her own negligence contribute; and on the question of contributory negligence gave the following: 'In respect to the question of whether the plaintiff was or was not guilty of negligence which contributed to her alleged injuries, you are instructed that the plaintiff had the right to make such reasonable exertions for the protection of her property as a reasonable prudent person would have done under like circumstances. But if she exerted herself to a greater extent or more violently than an ordinarily prudent person would have done under like circumstances, and her injuries, if any, resulted from such exertions, then, even though she acted in good faith, or under the belief that what she did was necessary, she cannot recover for such injuries, if any, to her health. In determining whether the plaintiff was or was not guilty of negligence that contributed to the alleged injury to her health, you would not be justified in finding that she was free from any negligence that contributed to her injuries, if any, from the facts alone (if they be facts) that the danger to her property was great, or appeared to be great, and that she acted in good faith, in an honest purpose to prevent the spread of the fire, and thus protect her property from destruction or injury, for her motive or conduct, however honest or well intended, cannot be made the basis of a recovery, if, as a matter of fact, she did not act as a reasonably prudent person would have acted under like circumstances. In determining this question, however, you should take all the facts and circumstances concerning the fire, and the acts of the plaintiff as disclosed by the evidence, into consideration.' "

But counsel contends that there is no evidence of any injury which was occasioned by such overexertion, but evidence of injuries which were the result of fright alone, and that the law is well established that damages for fright alone without accompanying physical injury

cannot be recovered. We do not so read the evidence, however, and, though fright might have entered into the question, there is sufficient evidence to go to the jury on the question as to whether the physical exertions were or were not responsible for at least a part of the injury. One certainly cannot escape liability because an injury which he has occasioned has been increased by his own act, even though he might not be liable if such other act were taken by itself. Dr. Peake certainly testified that the work which plaintiff did at the fire, and the strain which she underwent, were in his opinion the cause of her present condition. He testified that he found "rigidity of the muscles along the spine, not more on one side than on the other," and in answer to the question: "Does such a condition of the muscles arise from fright?" answered, "No."

Counsel also ingeniously argues that no damages can be recovered for fright alone, and therefore not for the result of fright, and that as plaintiff admits that it was the fear of the fire that made her work as hard as she did, no recovery can be had. This argument, however, hardly appeals to us. Of course, she was afraid of the fire, and, of course, it was the fear of the fire and the destruction that it would create that induced her to work to suppress it and to save her property. Such fear, however, is the impelling cause in every such attempt. Fortunately for the progress of the human race, we, as a rule, are not jellyfish, but human beings who are gifted with nerves and with feelings, and the law must be administered upon this assumption.

The fact is that defendant's theory that the injuries sustained by the plaintiff were the result of fright, and of fright alone, seems to us to be based upon conjecture rather than upon the testimony. Outside of the fact, indeed, that plaintiff testifies that she lies awake at night thinking and scared of the fire, there is practically no evidence of any injuries except those which are the direct result of the strain and the exertion, and it is very natural for a person who is awakened at night by physical pain caused by overexertion during a fire to think of the fire during the periods of her wakefulness. It is true that there is evidence that plaintiff is in a nervous condition, but a nervous condition can arise from physical injuries just as much as from mental. These facts, we believe, will be apparent from an examination of the record. It will also, we believe, be apparent that the plaintiff did no

more than an ordinary woman left alone with a young daughter on the prairie would do under the circumstances in order to protect her home against destruction by fire.

Her testimony is in effect as follows:

All at once I looked up to the hills and I seen smoke coming down in the fields. It was about 12 o'clock. We had a quarter section of land. We had a little frame house and granary and chicken coop and barn. I and my daughter and husband live in that house. When I first discovered the fire my daughter was looking for her cows. It was coming from the southwest, and kept on coming to the northeast until it got up to my husband's farm, where I was living. I went home after I saw the fire, and then went to doing some work to save some of the things before the fire got too close to the buildings. I first went to take the washtubs outside near the house,—two of them I set out. I took two pails, each holds about 12 quarts of water, and I was trying to carry water right along to fill those tubs and fill some wooden pails that I set there. Next, I believe I tried to climb in the granary to get the sacks out and lay around to be handy if I got help to fight the fire. I think I carried my rocking chair down to the cow corral first. Then I went to take a bushel basket, took all my books and laid them in, took the things out of the writing desk, and the papers and coverings, then the clothes, and carried them down in the cow corral. I came right back and got clothes. I took my big dish pan, filled it up with groceries and carried it down, and then I went right along all the time carrying things down. I took some of my bedding, some clothing, my linens in the drawers I had in the bureaus, and my best clothes and my husband's clothes and his big coats and pants and shoes and anything I chanced to get, and put them into boxes and carried them down.

Q. You carried those down to the corral?

A. Yes.

Q. Who came, if anybody, to help you fight the fire that you remember of.

A. There didn't come anybody for a long time. The girl came home. At first I was alone carrying things; the fire was almost up to our place. I told her to go quick as she could on horseback and get some men from the threshing machine. She went right off and left me

alone again, and I didn't get any help until Mr. Keyes. He was the first one to come to the place, and Charlie McDermott and he was down by the well at first. Then I tried to take pails of water up and carry to them to fight the fire with, the fire was near the granary then and the chicken coop was almost on fire. I helped fight the fire. I carried some water for them. After that I carried more water up about the house. I walked up and I seen they had lots of water left and I didn't carry any more up. I took some other things up. I went down to the barn and let the colt out of the barn. There was a horse in the barn too, and I took her and tied her to the wagon by the house.

Q. Now, after Mr. Keyes came and helped with the fire, did they leave before the fire was all out?

A. Yes.

Q. And did you fight any fire yourself?

A. Yes. I was so afraid the barn would be on fire. The fire went around behind the barn. I looked and I seen there was nobody to fight it there. I didn't have water and so I took ground and threw on the fire to put it out along the lines, and I called the girls to come over with some water and help fight this fire. They brought water over. We took wet sacks and fought it with them. During the afternoon some of my husband's grain stacks burned up. I went up to the stacks and I felt so sorry; and there was lots of people that couldn't come to help fight it; and the wind come so hard that we couldn't save them. After the men went away and I had the fire out I tried to carry the things back in the house. I felt all played out. I felt awfully weak. Then they carried in my sewing machine, my girl and the other girl, and I helped them carry it over to the house, and I got such a pain in my hip, and I couldn't carry it any further, over there a little way; they had to carry it themselves. I carried some little things, some clothes and things like that, and bread and groceries. They helped me carry those other things in. I felt awfully weak; I was hardly able to walk any more. I was never sick of any sickness that I know of before this fire. There was some headaches once in a while. Sometimes had a cold. Never had a sick cough in the winter time, never as long as I lived on the farm. Before this fire I did gardening on the farm,—we always had a garden, and had my housework besides. I did the washing and attended to the milking. The first years I had to make butter

every week day before we had a cream separator. Since the fire I wasn't able to do hardly anything. I couldn't do the milking or make any garden. I feel sick all over my body. I feel so shaky, my nerves bother me, my head I couldn't move around at times, and I feel nervous and I couldn't hardly talk to anybody. My back feels weak all the time. My hip hurts too. This one (indicating left hip) I never had any of those pains before the fire. I was sick right the next Sunday; I wasn't able to be out at all. I got awfully sick to my head and had a sick headache. From that time down to the present, I have never felt all right again. I feel so weak and aching in my body. In the morning I couldn't dress. To lay on my back, I couldn't rest. I wake up in the night scared about the fire quite often. In the morning when I want to get up I was hardly able to dress myself or comb my hair. I wasn't able to move my arms. . . . I never feel all right. My nerves bother me in the head the most, and when I want to do anything I get sick to my back and shake, and I am not able to do anything. . . . When I first saw the fire coming I got two tubs out of the house. I put them on the east side of the house about 350 feet from the pump. Then I carried water up hill to fill them. It is down hill to the well. I carried water up and filled those tubs. I tried to pump water in that barrel so that they could take the water out of there. I had to carry water to put out the fire. The manure was burning around the barn by the corner, and there was lots of smoke and fire and it would burn right along, and I carried water to put that out, after the men were gone. The fire in the manure by the barn occurred after the men had gone. . . . The next day the grain stacks burned until 9 o'clock —it wasn't burned down. My girl tried to get the potatoes on the wagon, and Saturday night my man came home. I have not done any chores since the fire. I never was nervous in my head in my younger years. I never had any nervous troubles of any kind. Before the fire I never had any nervous or hysterical trouble.

Dr. Francis Peake also testifies in substance:

I told Mr. Wilson I couldn't do much for her without seeing and looking her over to see what the trouble was. Then she came to me. I found her very nervous and trembly and shaky, and complaining of her being "all played out" as she called it. I examined her to find

out where the trouble was. I examined her physically,—her heart and her lungs and back and limbs, giving her a good, thorough examination; and her kidneys and a urinary test. And I tested her reflexes and examined her back. She complained of her back more than anything else,—had headaches and backaches; and she was as I say nervous and weak and trembly and couldn't sleep nights,—said she didn't rest well. She said that she was all the time dreaming of fire and would wake up startled and excited in the night. I made the usual examination which I considered necessary for the treatment. After I made my diagnosis and came to the conclusion that she was suffering from a weakened state brought on by overexertion and nervous fright, or, as I would express it, the cause of this nervous state, her waking up in the night and dreaming and crying out of the fire, I knew it affected her nerves and nervous system, and that she had been through some ordeal. She then told me about this fire and about all that she did. I also questioned her about it. I then prescribed for her for the effects of the overstraining and overexertion, and I judged she had perhaps taken some cold after overexerting that had settled in her back and caused her to have backache,—which would be a natural condition resulting from such exposure. I gave her medicine for that condition and also a treatment or two at that time with the light, the electric lamp, for her back. . . . I found rigidity of the muscles along the spine, not more on one side than on the other. These treatments bring the heat in the muscles and release the tension of the muscles, and I gave her these treatments to overcome some of these conditions of the muscles in the back. She seemed to be suffering more through the back and up, and through the stomach, so that the stomach was easily upset on the least exertion,—in coming to town she would get all upset and would be sick for a day or two. Once she was sick for three days when she came to see me, just in getting down here. I treated her that way at different times. She was down here most every month but one. At one time I had her here four weeks under treatment to relieve these conditions of the back. She complained of headaches and trouble of that kind,—would be sick two or three days at a time. Not exactly a sick headache, but a nervous headache. She has been under treatment the biggest share of the time since, and she has been taking what I prescribed for the stomach conditions, for those conditions brought on,

or that brought on the headaches, as much as she could, and for the backaches. My opinion is that she is permanently injured.

Q. In your opinion, are those injuries due to the exertions that she put forth at the time of this fire in question?

A. I think that it could be the cause of it all right. Assuming that the statements are true given by her on the witness stand as to not being disabled before, and having been more or less disabled at all times since, *in my opinion the work that she did and the strain she underwent in that fire would be the cause of her present condition.*

There is, it is true, evidence in the record, and furnished by two doctors who were called by the defendant, that the plaintiff, when examined by them, had no signs of injury other than that she was in a more or less nervous condition. The case, however, was tried to a jury, and, even if this evidence be given the fullest credence, the fact nevertheless remains that competent testimony was introduced by the plaintiff tending to show serious injuries which were occasioned by the overexertion at the fire, and such being the case, the question as to the injuries and their cause was for the jury, and not for the court, to pass upon. The evidence of the plaintiff, also, to our mind shows a necessary and natural effort to extinguish the fire, and such an effort as any woman who had her home and buildings to protect would naturally put forth, and would be reasonably called upon to put forth under the circumstances which confronted her. It was her duty to do what she reasonably could to reduce the damages, and it is idle to say that she was merely the wife of the fee owner of the land. Not only was her *home* and her immediate personal property in danger, but she was the person in control, and there can be no question that, if she had refrained from making the very efforts which are now sought to be imputed as negligence against her, their omission would have been imputed as contributory negligence to her husband, and urged as a defense to any action which he might have brought for the destruction of his grain and buildings. "Where an injured party finds that a wrong has been perpetrated on him," says the author of 13 Cyc. 71, "he should use all reasonable means to arrest the loss. He cannot stand idly by and permit the loss to increase and then hold the wrongdoer liable for the loss which he might have prevented. It is only incumbent upon him, how-

ever, to use reasonable exertion and reasonable expense, and the question in such cases is always whether the act was a reasonable one, having regard to all the circumstances of the particular case. The application of this rule sometimes has the effect of enhancing the damages rather than reducing them, but where a reasonable and bona fide attempt has been made on the part of the plaintiff to reduce the damages or provide for his own safety in case of personal injury, it does not relieve the defendant from a full recovery of the damages sustained." Even if the wife did not own the property in fee, she had the right to live with her children in the house and on the farm, and it cannot be said that one may start a fire and drive tenants and their families out of buildings, and not merely destroy their immediate personal property and clothing, but drive them out into the open and fire devastated prairie without being guilty of a tort against them. Nor can it be said that it is lack of ordinary care for a woman under such circumstances to try to save her home and the provisions of her family and her own and her children's clothing, to say nothing of the property which belongs to her and to her husband. The case is well summed up in Illinois C. R. Co. v. Siler, 229 Ill. 390, 15 L.R.A.(N.S.) 819, 82 N. E. 362, 11 Ann. Cas. 368, where a woman was burned while attempting to save her home from a similar conflagration, and where the courts said: "The question presented, so far as the demurrer is concerned, is whether one who has negligently set fire to another's premises can be held liable for damages caused by burning the owner while engaged in trying, with reasonable prudence and care, to extinguish such fire. Even though one's property has been negligently set on fire by another, the owner cannot permit it to be consumed without an effort to save it, and then claim reimbursement from the setter out of the fire. He must use every reasonable effort, consistent with his personal safety, to preserve the property. Toledo, P. & W. R. Co. v. Pindar, 53 Ill. 447, 5 Am. Rep. 57; Chicago & A. R. Co. v. Pennell, 94 Ill. 448. Where a person sees his property exposed to imminent danger through the negligence of another, he is justified in using every effort to save it which a reasonably prudent person would use under similar circumstances, even though the effort exposes him to some danger which he would otherwise have avoided. Due care depends upon the circumstances surrounding the action. It is to be determined with reference to the situation in which he finds

30 N. D.—31.

himself at the time. What is due care in one situation might be gross recklessness under different circumstances. Everyone is bound to anticipate the results naturally following from his acts. The appellant was therefore bound to anticipate, when the fire started, that the decedent would try to put it out. This she was doing, and the allegation is that she was using all due care and caution for her own personal safety. If in so doing the fire which appellant had negligently set out spread to and ignited her clothing without any want on her part of the care which an ordinarily prudent person would exercise under the circumstances, the appellant should be held to have anticipated such result as probable, and to be liable therefor. In order to make a negligent act the proximate cause of an injury, it is not necessary that the particular injury and the particular manner of its occurrence could reasonably have been foreseen. Dixon v. Scott, 181 Ill. 116, 54 N. E. 897. If the consequences follow in unbroken sequence from the wrong to the injury without an intervening efficient cause, it is sufficient if, at the time of the negligence, the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result from his negligence. Chicago & A. R. Co. v. Pennell, supra; Pullman Palace Car Co. v. Laack, 143 Ill. 242, 18 L.R.A. 215, 32 N. E. 285, 14 Am. Neg. Cas. 291; Chicago Hair & Bristle Co. v. Mueller, 203 Ill. 558, 68 N. E. 51. The rule as to what constitutes proximate cause was considered in the case of Atchison, T. & S. F. R. Co. v. Stanford, 12 Kan. 354, 15 Am. Rep. 362, and it was said: 'Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence, and if they are such as might with reasonable diligence have been foreseen, the last result, as well as the first and every intermediate result, is to be considered in law as the proximate result of the first wrong cause. But whenever a new cause intervenes, which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequences must be deemed too remote to constitute the basis of the cause of action.' In Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. ed. 256, it is said: 'The question always is: Was there an unbroken connection between the wrongful act and the injury,—a

continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? . . . The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault and self-operating, which produce the injury.' It is true that in this case the voluntary act of the decedent intervened between the negligent act of the appellant in setting out the fire and the injury occasioned by the burning of decedent. But this act was one of the intervening causes which the appellant with reasonable diligence might have foreseen. It was a consequence of the wrongful act of appellant which it ought to have anticipated. It was not a new and independent cause intervening between the wrong and the injury, or disconnected from the primary cause and self-operating, but was itself the natural result of appellant's original negligence. The case of Seale v. Gulf, C. & S. F. R. Co. 65 Tex. 274, 57 Am. Rep. 602, has been cited by appellant and fully sustains its position. That case holds that, whether the deceased was negligent or not in her attempt to put out the fire, it was this attempt, and not the original negligence of the defendant in starting the flame, that was the proximate cause of her death. This case was followed by the Missouri court of appeals in Logan v. Wabash R. Co. 96 Mo. App. 461, 70 S. W. 734. In the case of Chattanooga Light & P. Co. v. Hodges, 109 Tenn. 331, 60 L.R.A. 459, 97 Am. St. Rep. 844, 70 S. W. 616, the injury resulted from 'an act committed by the injured party so obviously fraught with peril as should be sufficient to deter one of reasonable intelligence.' The court, while reversing the judgment against the defendant, said: 'The rule has been extended so as to give the injured party redress where his effort to save property has been such as a reasonably prudent man would have made under similar circumstances.' The cases which sustain the position of appellant we think are wrong in principle, and opposed to the weight of authority. One whose property is exposed to danger by another's negligence is bound to make such effort as an ordinarily prudent person would to save it or prevent damages to it. If in so doing, and while exercising such care for his safety as is reasonable and prudent under the circumstances, he is injured as a result of the negligence against the effect of which he is seeking to protect his property, the wrongdoer

whose negligence is the occasion of the injury must respond for the damages. It is not just that the loss should fall on the innocent victim. We regard this as the result of the authorities which we have been able to examine, aside from the two above mentioned as sustaining the position of appellant. Berg v. Great Northern R. Co. 70 Minn. 272, 68 Am. St. Rep. 524, 73 N. W. 648; Liming v. Illinois C. R. Co. 81 Iowa, 246, 47 N. W. 66; Glanz v. Chicago, M. & St. P. R. Co. 119 Iowa, 611, 93 N. W. 575; Wasmer v. Delaware, L. & W. R. Co. 80 N. Y. 212, 36 Am. Rep. 608; Page v. Bucksport, 64 Me. 51, 18 Am. Rep. 239."

The rule is laid down by Judge Elliott in his work on Railroads, vol. 3, § 1247, where he says: "It sometimes happens that personal or other injuries aside from the mere burning of property are caused by fires set out by railway companies. In such cases, where the injuries are a direct and proximate result of the railway company's negligence, it will be liable to one who is free from contributory negligence for damages on account of such injuries. . . . Where loss of life is caused by a fire negligently set, without any contributory negligence on the part of the person bringing an action or his intestate, the company setting the fire may be liable, but where a person voluntarily exposes himself to danger and is injured by the fire, there can be no recovery." In the case at bar the risk was not voluntarily assumed, but was assumed in recognition of a duty which was owing to the railway company, and the failure to perform which would have given rise to the defense of contributory negligence. Whether the plaintiff went too far in her efforts, to an extent to which no reasonable person would go, so that her efforts merged into a voluntary incurring of the danger, was clearly a question for the jury to pass upon. We certainly cannot say, as a matter of law from our perusal of the record, that she did any more than one would be presumed or expected to do under the circumstances. A prairie fire is a thing that should be stamped out immediately, and is not to be trifled with.

We have carefully examined the cases cited by counsel for appellant. We find, however, that few, if any of them, are applicable to the case at bar. Some of them were cases where the person injured was a volunteer merely, upon whom no duty of reducing damages was placed. See Pike v. Grand Trunk R. Co. 39 Fed. 255. In the case at bar the

plaintiff was protecting her own home.  Others are cases where the risk was recklessly encountered, and where the danger of injury was apparent.  See Cook v. Johnston, 58 Mich. 437, 55 Am. Rep. 703, 25 N. W. 388; Chattanooga Light & P. Co. v. Hodges, 109 Tenn. 331, 60 L.R.A. 459, 97 Am. St. Rep. 844, 70 S. W. 616.  There is no evidence of recklessness in the case before us.  Others still are cases where the court absolutely fails to distinguish between the element of anticipation when considering actionable negligence and the damages which may be recovered when that negligence exists and is actionable.  See Chattanooga Light & P. Co. v. Hodges, supra; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. ed. 256; Seale v. Gulf, C. &. S. F. R. Co. 65 Tex. 274, 57 Am. Rep. 602; Logan v. Wabash R. Co. 96 Mo. App. 461, 70 S. W. 734; Cleveland, C. C. & St. L. R. Co. v. Lindsay, 109 Ill. App. 533.

Not only are these last mentioned cases opposed to the great weight of authority and absolutely untenable on principles of legal logic, but the statute of North Dakota expressly provides that one guilty of a tort shall be liable "for all the detriment proximately caused thereby, *whether it could have been anticipated or not.*"  Section 7165, Compiled Laws of 1913.

The questions of negligence and contributory negligence and proximate cause which are presented by the case before us were for the jury, and not for this or the trial court, to pass upon, and the conclusions of that jury are binding upon us.

Counsel contends that the court erred in overruling defendant's objection to the following question and answer:

Tell us what you did in tracing where the fire started?

A. I went over to the track and I found great big cinders about the size of a hen's egg, sent out of the engine or else out of the smoke stack—

Mr. Conmy: We move to strike out the answer as not responsive, and incompetent, irrelevant, and immaterial, no foundation laid.

We really see no merit in this objection.  A part, at least, of the answer, was responsive, competent, relevant, and material.  The motion was directed to the whole answer, and it therefore should not have been sustained.

There is also clearly no merit in counsel's objection to the testimony of Mrs. Knutson, a neighbor, and to the ruling of the court during the following examination:

Q. Where were you when you first saw the fire?

A. At my home on Section Fourteen.

Q. In what direction from you was the fire when you first saw it?

A. It was southwest.

Q. And in reference to the Northern Pacific Railway Company railroad, where was it?

A. It was started near the track.

Mr. Conmy: We move to strike out the answer on the ground it is not responsive to the question and no foundation laid. (Motion denied.)

Q. Where was the fire when you first saw it?

A. Near the track.

Q. Which way was your home, the place where you lived, from where the fire was?

A. It is north and a little east.

Q. Did you see any more than one fire at that place?

A. No, sir.

Q. Do you know whether that fire came to the northeast and burned over part of your place, down toward the Wilson farm?

A. Yes, sir.

Q. They live on the same section you live on?

A. Yes.

A good deal is said in criticism of the answer, "near the track," but no objection seems to have been made to the question and the answer in this respect. The only exception taken was to the court's refusal to strike out the answer, "It started near the track," and the only objection in this case was that the answer was not responsive to the question and no foundation laid. The questions were: "In what direction from your place was the fire when you first saw it?" and, "With reference to the Northern Pacific Railway Company railroad, where was it?" It would seem to us that the answer was both responsive and that a foundation had been laid. The witness had testified that she had seen the fire; that part of it had burned over her own farm, and what she said in answer to the question, "With reference to the

Northern Pacific Company railroad, where was it?" her answer, "It started near the track," was certainly responsive. If she had answered, "The first indications of the fire that I saw were near the track," there could not possibly have been any objection. It appears to us, therefore, that the objection of counsel is merely technical.

Nor did the court commit reversible error in refusing to strike out the answer of the witness Keyes, when, in answer to the question, "Where did you first notice the smoke of this fire?" he said, "It appeared to me from where I was it was on the railroad track." The objection was made that the answer was merely the "opinion of the witness and a conclusion." It is true that afterwards in his testimony the witness stated that he was $2\frac{1}{2}$ miles from the fire at this time, but this fact had not been proved at the time of the question, nor do we consider it controlling. The testimony was certainly competent as tending to show from what direction the fire came, and, of course, it was a conclusion. Every result of the use of the eyesight is as a matter of last analysis a deduction or a conclusion. If judgments were reversed for answers such as the one before us, none of them would stand. The direction from which the fire came was an important matter, as well as the fact that it was on the railroad track. In fact it was not necessary that it should have been started on the railroad track itself in order that the company be liable. The witness was merely testifying as to the direction from which the fire was coming and to the conclusions which he arrived at from his observation. If he had said, "The first indications of the smoke that I noticed were near a tall tree which stands on the corner of the section," the answer would certainly not have been objectionable. Why then should it have been objectionable when he used the railroad track as a means of description or location, rather than a tree or other landmark?

Nor do we see any merit in the contention that the court erred in sustaining the objection to the question propounded to the daughter of the plaintiff: "Were the relations of your mother and Mr. Wilson before this fire always satisfactory?" nor the refusal to allow the answer to the question propounded to the witness Lester: "Did Miss Florence Wilson ever tell you at your house that Richard Wilson came home drunk one night and drove her and her mother out of the house?" The objection was that no foundation had been laid either in point of

time or as to persons or as to place, and as not admissible under the pleadings in this case. It is sufficient, however, to say that the testimony sought to be elicited was purely hearsay, and could at the most have had but a remote connection with the case.

As far as the first question is concerned, surely no error was committed. The word "always" is far-reaching, and the materiality of the relationship of the parties during their whole married life is not apparent to us.

Nor do we find any error in the rulings of the court during the following examination of Dr. Gerrish:

Q. It has been your experience that a patient suffering such pain as would keep them from sleeping nights for a period extending over a year, you would be able to discover that?

A. I think I would. Yes.

Q. What would you expect to find in a patient suffering along that line?

Mr. Knauf: Objected to unless applying to the patient in question, whom the doctor says he has never seen. No proper foundation laid.

The Court: The question should be based upon a state of facts of some kind.

Q. A patient who states that she has not been able to sleep well nights; some nights has wakened up frequently, has wakened up and has been some two or three days at a time for a period extending over a year, would be in what condition after that period in your judgment?

Mr. Knauf: Objected to unless applying to the patient in question. No proper hypothesis for the testimony being given. Objection sustained.

What injury could possibly have been sustained from the rulings of the court in this matter it is difficult for us to see. There could only have been one answer and that would have been that she was in a nervous condition. Counsel says, "We offered testimony to show that her health was poor before the fire; that she had doctored for her health before the fire. The above testimony was offered to show the treatment the plaintiff received from her husband and the fact that he was a drunkard and abused her and drove her out of the house and kept her out. It would seem that treatment of this kind could have a tendency at least

to produce nervous trouble in a woman, and it was most relevant and material in that it had a tendency to show that possibly matters other than the fire were responsible for a part of the plaintiff's nervous condition." All of this may be true, but what had the question to do with the causes of her lying awake nights? The question was not directed to what causes induced her to be in the condition which made her lie awake, but to what would be the result of her lying awake. Even if the question were unobjectionable on technical grounds, its relevancy hardly seems apparent to us.

The judgment of the District Court is affirmed.